## HEGG et al. v. UNITED STATES.

District Court, D. Minnesota, Fourth Division. September 9, 1927.

1. **Army and navy** ⚖51½—Where soldier lapsed government insurance while suffering compensable injury, then died, beneficiary was entitled to amount of insurance undischarged compensation would purchase.

Where a soldier lapsed his insurance while suffering from a compensable injury, then died, *held* that his beneficiary was entitled to the amount of insurance which the undischarged compensation due deceased would revive, as at day of his death.

2. **Army and navy** ⚖51½—Revival of lapsed insurance is automatic, when events described in statute have occurred (World War Veterans' Act, § 305, as amended by Act July 2, 1926, § 16 [38 USCA § 516]).

When soldier, who was entitled to compensation, died after having lapsed insurance policy, the revival of his insurance within meaning of World War Veterans' Act, § 305 (38 USCA § 516), and proviso thereof added in 1926, takes place automatically when events described in statute have occurred.

3. **Army and navy** ⚖51½—Death of soldier, who was suffering compensable injury and lapsed his insurance, revived policy as of date of death (World War Veterans' Act, § 305, as amended by Act July 2, 1926, § 16 [38 USCA § 516]).

Where a soldier lapsed his insurance while suffering from a compensable injury, and died entitled to uncollected compensation, the happening of such events revived the policy, by virtue of World War Veterans' Act, § 305, as amended by Act July 2, 1926, § 16 (38 USCA § 516), as of the date of his death.

4. **Army and navy** ⚖51½—Soldier compensable under disability provisions is entitled to compensation, even though not claimed (World War Veterans' Act, § 200 [38 USCA § 471]).

A soldier with compensable disability is entitled to compensation by virtue of World War Veterans' Act, § 200 (38 USCA § 471 [Comp. St. § 9127½—200]), whether or not he claims compensation.

At Law. Action by Hannah Hegg and Charles R. Vollmer, administrator of the estate of Paul Edward Carlson, deceased, against the United States. Judgment for plaintiffs.

Schwartz & Halpern, of Minneapolis, Minn., for plaintiffs.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and J. H. Fraine, Acting Re-

gional Atty., U. S. Veterans' Bureau, of Minneapolis, Minn., for defendant.

JOHN B. SANBORN, District Judge. The cause was submitted upon a stipulation of facts.

Paul Edward Carlson was in the military service of the United States between June 1, 1918, and the month of June, 1919. While in such service, there was issued to him a contract of war risk insurance in the sum of $10,000, under the terms and provisions of the War Risk Insurance Act of October 6, 1917 (40 Stat. 398), designating his sister, Hannah Hegg, as beneficiary. During all the time of his service, there was deducted from his pay as a soldier a sufficient sum to pay the monthly premiums provided by law to be paid upon said contract. Subsequent to his discharge in June, 1919, Paul Edward Carlson paid no additional premiums, and said contract of insurance lapsed, except in so far as it is affected by the provisions of section 305 of the World War Veterans' Act (38 USCA § 516; Comp. St. § 9127½—305).

Paul Edward Carlson was awarded by the defendant permanent total disability compensation from August 27, 1922, and was paid such compensation until the time of his death, December 16, 1923. After his death, and on the 14th day of February, 1924, the United States Veterans' Bureau made a review of the evidence in his case, and upon such review made a rating awarding to said Paul Edward Carlson temporary partial disability 10 per cent. from date of discharge to February 16, 1920; temporary partial 25 per cent. from February 17, 1920, to August 12, 1922; temporary total from August 13, 1922, to August 26, 1922; and permanent total on and after August 27, 1922, to the date of death.

[1] At the time of the death of Paul Edward Carlson, he had not collected from the United States the compensation due on the first three items of the award, to wit: Temporary partial 10 per cent. from date of discharge to February 16, 1920; temporary partial 25 per cent. from February 17, 1920, to August 12, 1922; temporary total from August 13, 1922, to August 26, 1922. The amount of compensation due and owing on said award was sufficient, under section 305 of the World War Veterans' Act, to revive $9,708.30 of the original $10,000 insurance. No part of the said $9,708.30 has been paid to the plaintiffs, or either of them. Under the provisions of the War Risk Insurance Act, and on the rating above recited, there would

have been due to Paul Edward Carlson the sum of $55.82 per month from August 27, 1922, to the date of his death, December 16, 1923, amounting to $894, and to some person the balance of the said sum of $9,708.30.

On April 29, 1926, the Assistant Director of the United States Veterans' Bureau wrote the following letter to the plaintiff Charles R. Vollmer:

"Dear Sir: It is desired to advise that the insurance in the amount of $9,708.30 under the $10,000 policy contracted for by the above-captioned deceased, has been revived and will be payable in monthly installments of $55.82 to the estate of the above-captioned deceased from August 27, 1922, to December 26, 1923, and to Mrs. Hannah Hegg, sister of the above-captioned deceased and sole designated beneficiary, on the same basis from December 27, 1923, to August 26, 1942.

"Inasmuch as the amount payable to the estate of the above-captioned deceased exceeds $500, it will be necessary that there be forwarded to this office certified copy of letters of administration upon this deceased soldier's estate, together with petition therefor. In the event this petition fails to disclose that there is due this soldier's estate approximately $894, there should be submitted, in lieu of this petition, a court certificate to the effect that it has been apprised of the fact that there is due this soldier's estate $894.

"The attached form 514 should be executed by Mrs. Hannah Hegg, in connection with the adjustment of insurance benefits payable to her under this soldier's policy."

On September 20, 1926, George E. Ijams, Assistant Director, wrote to counsel for plaintiff:

"Dear Sir: With further reference to this claim for war risk insurance, you are advised that no benefits can be allowed under section 305 of the World War Veterans' Act as amended July 2, 1926. The reason for this unfavorable decision is the proviso limiting the beneficiaries of revived insurance to the veteran, his widow, minor children or dependent parents. The evidence on file shows Mr. Carlson is not survived by any relative within these permitted classes."

Thereupon this suit was commenced to recover the amount due the estate of the deceased and the amount due the beneficiary under the contract of insurance.

The question in this case is as to when, if ever, the insurance contract issued to Paul Edward Carlson was revived under section 305 of the World War Veterans' Act.

Section 305, Act of June 7, 1924 (chap-

ter 320, 43 Stat. 626), provides as follows:

"Where any person [referring to insured under United States Veterans' Life Insurance policy] has heretofore allowed his insurance to lapse while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, would purchase if applied as premiums when due, shall not be considered as lapsed; and the United States Veterans' Bureau is hereby authorized and directed to pay to said soldier, or his beneficiaries as the case may be, the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law."

The Act of July 2, 1926, § 16 (chapter 723, 44 Stat. 799 [38 USCA § 516]), amended this section by adding the following proviso:

"Provided, That insurance hereafter revived under this section and section 309 by reason of permanent and total disability or by death of the insured, shall be paid only to the insured, his widow, child or children, dependent mother or father, and in the order named unless otherwise designated by the insured during his lifetime or by last will and testament."

[2] On June 22, 1927, Hon. William D. Mitchell, acting Attorney General, gave a written opinion to Hon. Frank T. Hines, Director United States Veterans' Bureau, Washington, D. C., covering the main question here in controversy. After quoting section 305, as amended, he says:

"The proviso which was added by the Act of July 2, 1926, applies only to insurance revived after that date, and, to determine the application of the proviso, it is necessary to know when the insurance is revived, and that involves an inquiry into what constitutes revival within the meaning of the proviso.

"The General Counsel of the Veterans' Bureau has reached the conclusion that insurance is revived after July 2, 1926, so as to be subject to the proviso restricting the class of beneficiaries, only in those cases where the insurance has matured or matures either by death or permanent and total disability occurring after July 2, 1926. It has also

been suggested that the insurance is not revived until the Director of the Bureau has determined the fact of revival, and, if his decision is made after July 2, 1926, the insurance may be said to be revived after that date, although the events prescribed in the statute giving rise to the right of reinstatement have all occurred prior to that date. A third suggestion is made that the revival does not take place until the payment of the first installment of the proceeds of the insurance, but there is no support for that in the statute, and the real question is whether a revival takes place when the events have occurred which give rise to the right or when the Director has decided that the insurance is again in effect.

"Section 305 prescribes a number of conditions or events which must occur before the insurance is revived. The final event in this chain of circumstances is the death or the permanent and total disability of the insured at a time when he is entitled to compensation remaining uncollected. Until death or permanent and total disability occurs, there is no revival, because the date of death or of permanent and total disability must be known to ascertain the amount of compensation remaining uncollected which may be applied to determine the amount of insurance revived. When such death or permanent and total disability occurs, the right of revival is complete and all of the events specified in the statute have occurred which have the effect of reviving the insurance or some part of it. It is not the decision of the Director which revives the insurance, but the occurrence of the events prescribed in the statute.

"Since the Director is required to decide whether there was any compensation uncollected so as to bring about the revival under section 305, there is something to be said in support of the view that the insurance is not revived within the meaning of this proviso until the Director has made his decision; but the stronger reasons support the conclusion that the revival takes place within the meaning of the proviso automatically when the events prescribed in the statute have occurred.

"Under the terms of the Act of July 7, 1924, when the events prescribed by the statute as necessary to effect revival of the insurance occurred, including the final event of death or permanent and total disability, the right of the insured or of the beneficiaries in the then permitted class to receive the proceeds of the insurance became fixed. If the proviso added by the Act of July 2,

1926, be construed to apply to cases where all the events necessary to effect revival had occurred prior to its passage, its effect, in some cases, would be to take away rights that had become fixed, even though they may not have been recognized by a decision of the Bureau, and there is no good reason to suppose that Congress intended to disturb such rights. Again, if it is the decision of the Director which constitutes the revival, cases otherwise identical would be dealt with differently, merely because in some the decisions of the Director were made before July 2, 1926, and in others after that date. If Congress had intended the proviso to apply to all cases in which the decision of the Director is made after July 2, 1926, instead of referring to insurance 'hereafter revived,' it would no doubt have referred to insurance which the Director 'hereafter decides is or has been revived.'

"I agree with the conclusion of the General Counsel of the Bureau that the revival takes place upon the occurrence of the death or the permanent and total disability and not when the Director decides that the insurance is again in effect or pays the first installment."

The Comptroller General of the United States has taken a contrary position, which was the basis of the refusal to pay the claim of the plaintiffs contained in the letter of September 20th hereinbefore referred to.

The opinion of the acting Attorney General is so clearly correct, and the reasons given for it so satisfactory, that I see no occasion to discuss this question further.

The stipulated facts in this case show that the soldier—

(1) Lapsed his insurance while suffering from a compensable disability, for which compensation was not collected.

(2) That he died.

(3) That at the time of his death he was entitled to uncollected compensation.

(4) That the amount of compensation to which he was entitled, but did not collect, would purchase $9,708.30 of insurance.

[3, 4] The happening of these events revived the policy as of the date of his death. It has been suggested that, in view of the fact that at the time of his death the compensation to which he was entitled, being undetermined and not collectible by him, cannot be used to purchase insurance. This construction of the section is not warranted by its language. A soldier with a compensable disability is entitled to compensation, whether he claims it or does not claim it. Section 200 of the act (38 USCA § 471;

21 F.(2d)—40

Comp. St. § 9127½—200). It is the compensation to which he was entitled, computed to the time of his death or permanent disability, but which he did not receive—the amount of the undischarged obligation of the government to pay him compensation— which is to be used to revive his insurance as of the date of death or permanent disability, without regard to whether he had perfected his right to receive it or not at that time.

It is obvious that in this case the insurance was revived prior to the amendment of July 2, 1926.

Finding the facts and the law to be as above stated, I conclude that Charles R. Vollmer, as administrator, is entitled to judgment for $894, and that the plaintiff Hannah Hegg is entitled to judgment for the balance of the insurance, to be paid in installments as provided by law, less the fees of their counsel, who, for their services, are entitled to the maximum amount provided by law, being 10 per cent. of the amount recovered by the administrator, and 10 per cent. of such installments of insurance as may be paid to Hannah Hegg pursuant to the judgment to be entered herein.

Judgment may be entered accordingly.