**SPRENCEL v. UNITED STATES.**

No. 5913.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1931.

Y. D. Mathes, of Houston, Tex., and Parker V. Lucas, of Dallas, Tex., for appellant.

John D. Hartman, U. S. Atty., and Chas. R. Guinn, Regional Atty., Veterans' Bureau, both of San Antonio, Tex., for the United States.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff sues upon a policy of war risk insurance in his favor for the sum of $10,-000, issued January 18, 1918. He alleges that $2,500 of this amount is admittedly in force, from which he has received monthly payments since May 14, 1925; that while at the front on October 15, 1918, he was gassed and at the time of his discharge on July 3, 1919, was totally and permanently disabled, which matured the whole policy. In the alternative plaintiff alleges that if he was not so totally and permanently disabled, then he was at that time "suffering from a compensable service connected disability, as recognized and rated by the defendant; and for which an award of compensation was made and approved by the proper official or officials of the defendant, which said compensation was uncollected until after plaintiff became permanently and totally disabled in fact; said uncollected compensation being witheld from plaintiff, by the defendant, until on or about December 15, 1920, and until April 21, 1921, which dates were subsequent to the time said plaintiff became permanently and totally disabled." Further, that under section 305 of the World War Veterans' Act of 1924, as amended (38 USCA § 516), "the said uncollected compensation should be adjudged and allowed as premiums on the plaintiff's war risk insurance policy," which was sufficient to keep the policy from lapsing. He asks that the compensation claimed be applied to the payment of premiums according to the practices and regulations of the Bureau so as to permit him to recover the full amount of the policy.

The defendant excepted, first, that the petition disclosed no cause of action, which was overruled. Other exceptions were directed mainly to the alternative demand embraced in paragraph 9 of the petition, as outlined above. As to this paragraph, it was urged: (1) That the United States had not consented to be sued with respect to disability compensation; (2) that no cause of action was disclosed for the reason that the claim for compensation had been presented to the Bureau under section 305 of the World War Veterans' Act of 1924, as amended, for the purpose of reviving the insurance, which had been denied by the director, and no facts were alleged to show that his finding was "erroneous, arbitrary or capricious, or was contrary to law, nor is it shown therein by any allegation of fact that such decision was not supported by evidence"; (3) that the alternative demand did not affirmatively allege the commissioner awarded compensation sufficient to pay the premiums to prevent the policy from lapsing; and (4) that the ratings made by the bureau were immaterial, being the "exclusive function of the director of the Bureau" and over which the court has no jurisdiction.

Subject to said exceptions, defendant denied all of the allegations of the petition. It further alleged that the policy sued on had lapsed on the 30th day of August, 1919, for failure to pay the premiums, and that on or about November 9, 1923, plaintiff had made

application "for reinstatement of lapsed insurance in the sum of $2500.00, and in said application stating in writing that he was not then permanently and totally disabled, which representation was a material representation of fact; * * * that acting upon said application * * * the Bureau reinstated plaintiff's insurance in the amount applied for; * * *" thereby bringing "into existence a new contract * * * and (he) is thereby estopped from asserting any right or claiming any benefits under the original policy. * * * "

Thereafter, plaintiff amended his petition, setting forth in substance that at the time of the alleged application for reinstatement of the said policy, he was seriously ill, under the care of a physician of the defendant, totally disabled, and suffering from pulmonary tuberculosis, to the full knowledge of the defendant; that he is uneducated, and at the time of said examination did not know whether his condition was permanent or not; that the doctors of defendant explained to him that the question as to whether or not he was totally and permanently disabled "referred to the ratings on that subject then in effect by the U. S. Veterans Bureau," which statement he accepted in good faith when answering; that the answer so given was merely an opinion which could not have misled defendant for the reason the application disclosed fully his condition and the circumstances of his illness; that if there was no willful misrepresentation by the doctors, the "transaction" was induced by the mutual mistake of the parties "as to the condition of total disability being that as found by the Board instead of such as actually existed"; that there was no consideration for the alleged new contract and waiver because his rights under the original policy had already matured, and that he did not intend to and in fact and in law did not relinquish the same; that there was no authority in the board to reinstate or convert a policy which had already matured by virtue of permanent and total disability at the date of his discharge; further, that there was no reinstatement or conversion of any portion of said insurance "except only $2500.00 thereof," and the balance of $7,500 "remained wholly unaffected in any way by reason of the transaction alleged by defendant." He prayed for judgment as in his original petition, less such installments as had been paid under the alleged reinstatement.

The special exceptions, "in so far as they are directed to paragraph 9" (the alternative demands) of the petition, were "each and all sustained. * * * "

The parties stipulated that the equitable issues raised by the pleadings, that is, as to mistake, error, misrepresentation, etc., in the execution of the application for reinstatement for a portion of the insurance, "need not be heard or decided before the trial of the law issues," and the testimony introduced on the trial should be considered and these issues determined, "either alone or after an advisory verdict by the jury as he (the judge) deems proper. * * * "

At the conclusion of the trial, the court granted the request of the defendant for an instructed verdict, as stated in the judgment, for the following reasons:

"1. The undisputed evidence shows that the plaintiff on the 9th day of November, 1923, made application to the United States Veterans Bureau for reinstatement of his insurance policy, and in that application he stated that he was not permanently and totally disabled at that time, and upon said statement his insurance policy was reinstated, that, therefore, the plaintiff is estopped as a matter of contract from recovering herein."

"2. The plaintiff has failed to establish by a preponderance of competent evidence that he was permanently and totally disabled on or prior to August 10, 1919."

Plaintiff requested the court to "file declarations of law with respect to the equitable issues only without waiving plaintiff's right to submit said cause to the jury," and (2) "to hold and conclude as a matter of law * * * that the transaction described in defendant's plea of estoppel as a reinstatement of $2,500.00 insurance of plaintiff is void and of no effect. * * *," which was refused.

Plaintiff also moved the court "to make and file his declarations of law" with respect to the equitable issues submitted, which was likewise refused for the reason the court "was of the opinion same (was) sufficiently declared and set forth in the judgment and decree entered herein," and to which plaintiff excepted.

It will be seen from the above-quoted paragraphs of the judgment, the verdict was directed, first, because the court thought plaintiff was estopped to recover upon the original policy, "as a matter of contract," by the application for reinstatement in which he had said "he was not permanently and totally disabled at that time," and upon which statement "his insurance policy was rein-

stated; * * *" and, second, because plaintiff "has failed to establish by a preponderance of competent evidence that he was permanently and totally disabled on or prior to August 30, 1919."

Of course, if, as a matter of fact and law, the plaintiff was estopped from claiming benefits of the insurance, other than the $2,500 alleged to have been reinstated, then it was unnecessary to go into the issue of the weight of the evidence on the question of permanent and total disability at the date of discharge. While the lower court refused, upon request, to make specific findings with respect to the equitable issues of fraud, misrepresentation, and mistake, and also as to want of consideration, etc., alleged by plaintiffs to invalidate the application for reinstatement of a portion of the policy, for the reason that he was "of opinion same (was) sufficiently declared and set forth in judgment and decree,". the only ground stated in the decree is that which was in the exact language of a requested charge by defendant's counsel to the effect that "the undisputed evidence shows the plaintiff" had made application to the bureau for reinstatement of his policy and had stated therein "that he was not permanently and totally disabled at that time." There was no dispute that an application had been filled out in which plaintiff gave a negative answer to the question as to whether he was then permanently and totally disabled, but there was a serious issue as to whether the plaintiff had done so knowingly and intentionally, or had been misled by the statements of the physicians and other agents of the government who had prepared the papers for him at a time when he alleges that to their knowledge he was in a very bad state of health as revealed by the very application itself. There was also the further question of whether, in any event, the government had been prejudiced in any wise by the transaction, as well as the matter of consideration for the surrender of any rights which plaintiff had under the original policy.

If the equitable issues had been specifically decided by the lower court, they would be subject to review by this court, both as to fact and law. We think they were sufficiently raised by the pleadings to require decision by the lower court, having been by stipulation submitted upon the whole evidence, or such portions thereof as were pertinent, to be determined by the court at the conclusion of the trial. Therefore, from what appears in the record, we are bound to conclude that the lower court was of the opinion that the plain-

tiff was precluded as a matter of law from recovery simply because he signed the application for reinstatement with the statement in it that he was not permanently and totally disabled, notwithstanding the circumstances under which it was signed, for the evidence is not "undisputed" upon the other issues which we have mentioned above. This, we think, was error.

Since this case was appealed, Congress has settled the question of estoppel by the Act of July 3, 1930, § 24, amending section 307 of the World War Veterans' Act (Public Law No. 522), to read as follows:

"§ 518. All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title: Provided, That the insured under such contract or policy may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 445 of this title on any prior contract or policy, and if found entitled thereto, shall, upon surrender of any subsequent contract or policy, be entitled to payments under the prior contract or policy: Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance." 46 U. S. Stat. part 1, pp. 1001 and 1002 (38 USCA § 518).

The section just quoted, being remedial in its nature, is made to relate back to the date war was declared, and evidently was intended to cover any policy issued since that time. If a recovery is had on the old policy or contract, then before receiving payment under such a judgment, the insured is required to surrender any subsequent agreement. In other words, it seems to permit him to elect whether he will claim upon the original policy "without prejudicing his rights" and submit the issues of fact and law as to whether he is entitled to recover thereunder, notwithstanding any subsequent contract or policy. Since it is our conclusion that the lower court erred (for reasons which later hereinafter appear) in directing a verdict and will reverse the case for a new trial, we think it well to say that this statute will hereafter exclude from the litigation any question of estoppel based upon the application for reinstatement and the alleged contract arising therefrom.

As to the remaining ground for the directed verdict recited in the judgment, to wit, "that the plaintiff had failed to establish by a preponderance of competent evidence that he was permanently and totally disabled on or prior to August 30, 1930," it was not the province of the court to determine the weight or preponderance of the evidence. That was the function of the jury. The court could, if there was no substantial evidence to support a recovery, direct a verdict for the defendant; but if the proof as to the material facts was such that reasonable minds might draw different conclusions, one of which would sustain the plaintiff's claim, then the court was not justified in taking the case away from the jury. See Cyc. vol. 38, pp. 1516 et seq., 1532, 1563, verbo Trial, and authorities cited in footnotes. Before going into the service plaintiff was a young farmer, about twenty-one years of age, in good health, and had reached the third grade only in school. His own testimony, which was corroborated by other witnesses and circumstances, tended to show that at the time of discharge from the army, he was suffering from a cough and in such weakened condition that he could not perform any work for which he was fitted. If he was not permanently and totally disabled within the meaning of the law, then his policy lapsed on August 30, 1919, because he failed to pay the premiums after his discharge. He returned to his father's farm promptly after his discharge and rested about a month before attempting to do any work at all. The first thing he undertook was to operate a riding cultivator, but after about two hours was compelled to quit and return to the house, where he rested, and did nothing further until fall, when he attempted to pick a little cotton. The same result was experienced and no further work was done. About March, 1920, following, plaintiff consulted a physician, who found him suffering from active pulmonary tuberculosis, with cavities in the upper portions of his lungs, which disease, according to some of the doctors, had probably existed prior to his discharge. Since then he has been under treatment of physicians and during a good portion of the time in government hospitals. He has been rated by the bureau as permanently and totally disabled since May, 1925.

As against this evidence defendant offered the report of examination "prior to separation from service in the United States Army," wherein certain questions, purporting to have been asked of the plaintiff, were answered by the use of a rubber stamp bearing the word, "None," which document was admittedly signed by the plaintiff. The questions were as follows:

"Question. Have you any reason to believe that at the present time you are suffering from the effects of any wound, injury, or disease, or that you have any disability or impairment of health, whether or not incurred in the military service? Answer. None.

"Q. If so, describe the disability, stating the nature and location of the wound, injury or disease. A. None.

"Q. When was the disability incurred? A. None.

"Q. Where was the disability incurred? A. None.

"Q. State the circumstances, if known, under which the disability was incurred. A. None."

Plaintiff testified that he was passed through the examining office with a column of soldiers and these questions were propounded in such fashion that he did not fully understand them and believed they should be answered in the negative unless he had a hospital record while in the service, which he did not have. His discharge certificate was also offered in evidence and showed his "physical condition when discharged. Good." There was also filed a photostatic copy of a rating by the bureau of the plaintiff's condition, dated December 3, 1926, in which it appeared that he stated on form prepared for that purpose and signed by him on November 6, 1926, that he had been suffering from "pulmonary tuberculosis since March 9, 1920," and in which the bureau rated him as follows:

"TB: Temporary Partial, ten per cent. (10%) from discharge to 11—24—20.

"Temporary total, from 11—24—20 to 5—14—25.

"Permanent Total, from 5—14—25 to 1—1—26.

"Permanent Total, from 1—1—26. Incurred in or aggravated by service as provided in Section 300, W. R. I. Act, as amended. Reg. 4, B IV (b).

"Receipt of proof, examination of Nov. 18, 1926. Tuberculosis, pulmonary, chronic, far advanced, active."

There was also before the court and jury the application for reinstatement of a portion of the insurance mentioned earlier in this opinion. Other minor facts and circumstances bearing upon plaintiff's condition

506

appear in the record, but these are the major ones.

It is thus seen that there was substantial evidence tending to show that he was permanently and totally disabled at the time of his discharge and before the policy had lapsed, which, if believed and found to be the case, would have supported a verdict in his favor upon the original policy. The circumstances of his having signed his discharge, and the other papers above mentioned in the manner indicated, were to be considered by the jury in determining the weight and effect of his testimony in this case along with all the other proof; but if upon the whole they were of the view there was a preponderance of the evidence in his favor, they would have been justified in returning a verdict accordingly.

We therefore conclude that the lower court erred in taking the case away from the jury on the merits of the principal demand.

With respect to the alternative demand of paragraph 9 of the petition, as we understand it, plaintiff claims that, if he was not permanently and totally disabled at the time of his discharge or before August 30, 1919, he became so on or before December 15, 1920, or April 21, 1921, whichever date was the correct one, when compensation was first paid and that the bureau at that time and before making payment had found and decided that he was entitled to receive compensation through the period from his discharge until such finding sufficient in amount to have paid the premiums on his policy and kept it from lapsing, so that when he did become permanently and totally disabled on either of these dates, the policy was still in force and by virtue of such disability became matured. The provision of the law relied on is section 305 of the World War Veterans' act (38 USCA § 516), which reads as follows:

"Where any person has * * * prior to June 7, 1924, allowed his insurance to lapse while suffering from a compensable disability for which compensation was not collected and * * * becomes or has become permanently and totally disabled and at the time of such death or permanent total disability *was* or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, * * * would purchase if applied as premiums when due, *shall not, be considered as lapsed;* and the United States Veterans' Bureau is authorized and *directed* to pay to said soldier, or his beneficiaries as the case may be the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law." (Italics by the writer of this opinion.)

If the jury should find that the plaintiff was not permanently and totally disabled when discharged, but that the bureau, at the time or times alleged in paragraph 9 of the petition, had actually awarded compensation to cover the entire period from discharge, sufficient to have paid all the premiums from that date to the time he subsequently became permanently and totally disabled, which compensation was not paid until such disability, then the section just quoted, by its own terms, declares that so much of such insurance as said compensation "would purchase as premiums when due, shall not be considered as lapsed; and the * * * Bureau is hereby authorized and *directed* to pay to said soldier * * * the amount of said insurance, less unpaid premiums and interest. * * * *"* While it is the exclusive duty of the bureau to determine the facts as to compensation, subject to review only for errors of law, caprice, etc., once this has been done, the law itself makes the application thereof to the insurance, leaving the Bureau no discretion. If, as a matter of fact, plaintiff was totally and permanently disabled at the time of awarding such compensation, it would make no difference that the bureau had not found him so, for that issue is reviewable by the court and jury, in so far as it affects his right to insurance as distinguished from compensation. The amount of any unpaid premiums that would otherwise have been payable to the date of maturity, together with interest thereon, would, of course, have to be charged against and deducted from whatever judgment is recovered on the policy. See Armstrong v. U. S. (C. C. A.) 16 F.(2d) 387; Maddox v. U. S. (C. C. A.) 16 F.(2d) 390. Hence we are of the opinion plaintiff should be allowed to offer his proof under the alternative demand.

Certain other questions are raised by the record as to the admissibility of evidence, which will probably come up again on the next trial. The first is as to the ruling excluding a portion of the plaintiff's testimony concerning advice given him by the doctor for his contingent while he was in the service, as well as what was said by the government physician who examined him on the day

of his discharge. This evidence was tendered in explanation of the circumstance of his having signed the discharge papers with the answers to questions stamped therein, indicating that he was in good health. We think he was entitled to have this testimony considered, first by the court in passing upon the equitable issues of mistake, etc., and by the jury in determining the effect to be given to his answers relied upon by the government.

Plaintiff also complained of the sustaining by the court of objection to the following question, to wit: "Have you at any time since your discharge from the Army been physically able to follow any self-sustaining, gainful occupation?" upon the ground. "that it called for a conclusion on the ultimate issues in the case." This ruling, we think, was correct. That was one of the ultimate issues which the jury and court were called upon to determine. The plaintiff could testify to any fact which might support that conclusion, but did not have the right to give his opinion in the manner requested.

The court also excluded, upon the objection of the government, the testimony of a lay witness as to plaintiff's temperature taken with an ordinary thermometer. This, we think, should have been admitted, for there is nothing technical about using a thermometer of the kind in question.

As to the eleventh point made by the appellant, that he was not permitted to prove by the surgeon of his company that one-half of the men who went to the front with him on a certain sector never came back, we think the ruling was correct, for this fact did not have any bearing on whether or not he was injured. No doubt others of his company escaped altogether. The strain and exposure incident to his service at the front could have been amply shown without such testimony.

[11] Further complaint is made that the plaintiff's discharge was offered in evidence, which contained the statement that his "physical condition when discharged" was "good." In his testimony he admitted signing, but claimed he did not read the document. This did not render the certificate inadmissible without the testimony of the one who filled it out. Having admitted signing, it was for the jury to determine what effect should be given thereto in the light of plaintiff's testimony and other circumstances.

As to the issues raised under the thirteenth and fourteenth propositions made by the appellant, we think the enlistment rec-

ords, report of physical examination, service record, record of examination prior to separation from the service, medical cards, clinical records, etc., were official records which the War Department and Veterans' Bureau were required to keep under the statutes and regulations governing them and certified copies thereof are admissible in evidence and should be given such weight as in the light of the whole case the court or jury may think them entitled to receive. See section 661, title 28, U. S. Code (28 USCA § 661); Ballew v. U. S., 160 U. S. 187, 16 S. Ct. 263, 40 L. Ed. 388; U. S. v. Eaton, 144 U. S. 677, 12 S. Ct. 764, 36 L. Ed. 591; Boske v. Comingore, 177 U. S. 459, 20 S. Ct. 701, 44 L. Ed. 846.

The judgment appealed from is reversed, and the case is remanded to the lower court for further proceedings not inconsistent with the views herein expressed.