**BAINBRIDGE v. UNITED STATES.**

No. 3964.

District Court, W. D. Oklahoma.
Aug. 28, 1931.

Tom W. Garrett, of Oklahoma City, Okl., for plaintiff.

Fred A. Wagoner, Asst. U. S. Dist. Atty., of Oklahoma City, Okl., and T. J. Williamson, Insurance Atty., Veterans' Bureau, of Washington, D. C., for the United States.

VAUGHT, District Judge.

This case is submitted upon an agreed statement of facts which, together with the admitted statements in the brief of the defendant, are as follows:

The deceased and insured, Blaine G. Yeoman, enlisted in the military service on May 20, 1918, and was discharged on April 4, 1919, by reason of demobilization. While in service, the insured was granted a $10,000 war risk insurance policy in which he named as beneficiary his mother, Mrs. Emily Yeoman. The insured died on May 30, 1925, and the designated beneficiary, Mrs. Emily Yeoman, died on August 15, 1930. The plaintiff, R. J. Bainbridge, is suing in the dual capacity of the administrator of the estate of the deceased insured and the estate of Emily Yeoman.

The insured having been discharged on April 4, 1919, the next monthly premium due on his $10,000 war risk insurance pol-

icy became payable on the 1st of the following month after discharge, or May 1, 1919. The insurance therefore lapsed and terminated at midnight on May 31, 1919. On January 14, 1921, the insured applied to the United States Veterans' Bureau for disability compensation. The Veterans' Bureau determined that the insured was partially disabled from the date of his discharge from the service in the degree of ten per cent. or more, and also determined that his disability was service connected, and therefore compensable. It was further determined by the bureau that the insured became totally and permanently disabled under date of December 28, 1920.

It was furthermore found by the bureau that the insured, having been entitled to disability compensation on the day his insurance lapsed, and this compensation having been uncollected by same on December 28, 1920, the date of his total and permanent disability, the total amount of his $10,000 insurance should be considered as not having lapsed, and the benefits thereunder to be payable as of the date of total and permanent disability, less the unpaid premiums and interest thereon, as provided by law. The compensation due was used to pay the unpaid premiums on the policy and deducted from the face of the policy, and it was furthermore determined that there was due to the insured the net face value of the policy, or $9,854, payable in monthly installments of $56.66 each. These installments were paid to the insured every month from December 28, 1920, until December 30, 1923, when they were stopped because of the subsequent determination by the Director of the United States Veterans' Bureau that the insured's disability was not service connected; therefore not compensable under the law. That on said date the total amounts of insurance payments made to the insured before their discontinuance amounted to $1,940.41.

The insured died on May 30, 1925, having been totally blind and therefore totally and permanently disabled since December 27, 1920. Some time subsequent to the insured's death in 1925, the bureau, on reconsideration of the case, again ruled that the insured's disability was service connected and compensable, and the administrator of his estate, then his mother, was paid the accrued compensation payments up to the date of his death; but no further insurance payments were ever made. On October 12, 1928, or more than three years after the insured's death, the Director of the United States Vet-

erans' Bureau again ruled that the insured's disability of optic atrophy, causing blindness, was due to a misconduct disease which was incurred prior to his entry into the military service, and was not aggravated during such service, and therefore was, under the provisions of section 200 of the World War Veterans' Act, not compensable.

The contention of the government is that the action of the Veterans' Bureau of date of October 12, 1928, to the effect that the insured's disability was not compensable, was retroactive, and therefore vacated all prior orders and made void the policy of the insured, for the reason that there was never anything due to the insured which would have kept alive in full force and effect or reinstated the policy of insurance.

It is the contention of the plaintiff that, since the government actually received the premiums from the date of the insured's discharge up to December 27, 1920, the date on which it is agreed in the stipulation herein filed, the insured was totally blind and was therefore totally and permanently disabled; that the action of the Veterans' Bureau as of October 12, 1928, would not affect the policy of the insured, since the policy of insurance actually matured on December 27, 1920, and after six months from said date was incontestable.

The foregoing is a brief statement of the facts in the case and of the contentions of the respective parties. We find here an unusual situation. It is admitted that on the 27th of December, 1920, the insured was totally blind and was totally and permanently disabled. It is also admitted that at that time, and at the date of his discharge, the bureau found that he was entitled to compensation sufficient to pay the premiums on the insurance from the time of his discharge until the date on which it was determined that the insured was totally and permanently disabled, and that the policy actually matured and that the policy was reinstated, or was considered as not having lapsed. A settlement was, in effect, made, at that time; it being determined that the insured was entitled to the net face value of the policy in the sum of $9,954, payable in monthly installments of $56.66 each. This decision of the bureau was rendered in 1920. Three years later, the bureau reviewed this decision and rendered another decision adverse to the insured, and stopped further payment to the insured. The insured died in 1925 as hereinbefore stated, and in the same year the Veterans' Bureau again passed on this question and reversed its prior decision, holding, as a matter of fact, that the disability of the insured was service connected and compensable.

On October 12, 1928, another decision was rendered by the Director of the Veterans' Bureau ruling that the insured's disability was due to a misconduct disease incurred prior to his entry into the military service and was not aggravated during such service, and was therefore not compensable. Here are four decisions covering a period of eight years. Two of the decisions after the insured's death and two prior. The first decision was favorable to the insured, the second was adverse, the third was favorable, and the fourth was adverse. It has now been three years since the last decision of the Veterans' Bureau, and, in view of the history of this case, it is time for another decision, and, basing a prophecy upon the record in this case, the next decision will, in all probability, be favorable to the insured. It is admitted that a decision of the Director of the Veterans' Bureau relative to the reinstatement of a veteran's policy is conclusive. Meadows v. U. S., 281 U. S. 271, 50 S. Ct. 279, 74 L. Ed. 852, 73 A. L. R. 310.

How many decisions can the Veterans' Bureau make in a given case, and can it review its own decisions upon its own motion without limitation as to number? If a Veterans' Bureau decision is a final decision, is it as binding upon the government as it is upon the insured? While this case is submitted upon an agreed statement of facts, and the court has the advantage of only such facts as are actually admitted, at the same time this court is reluctant in reaching any other conclusion than that, from the circumstances as detailed in this case, the last *final* decision of the Director was beyond the power of the Director to make. In reaching the conclusion that the disability of the insured was the result of the insured's own willful misconduct prior to his entry into the service, more than three years after insured's death, and approximately three years after a decision by the bureau, also after the insured's death, that the disability was service connected and was compensable, at a time when the insured could not speak for himself (and evidently he was the only one who could give the information necessary upon which the Director could make the decision), is most certainly not resolving a questionable doubt in favor of the deceased veteran when two prior decisions by the bureau upon the

identical record were to the effect that the disability was service connected, and compensable.

The defendant contends that the Director had full power to do what he did by virtue of section 205 of the World War Veterans' Act (38 USCA § 494), which, in part, is as follows: "Upon its own motion or upon application the bureau may at any time review *an award* and, in accordance with the facts found upon such review, may end, diminish, or increase the compensation previously awarded, or, if compensation is increased, or if compensation has been refused, reduced, or discontinued, may (subject to the provisions of section 499 of this title) award compensation in proportion to the degree of disability sustained as of the date such degree of disability began, but not earlier than the date of discharge or resignation. * * * *"

Just what power does this section vest in the Director? It says the bureau may at any time review *an award*. Does this mean, however, that, covering a period of eight years, the Director or the Board may review a review of an award, and that they may then review a review of a review of an award? No such power as this is granted to any trial court of the federal government. A federal District Judge as a trial judge may review or modify his own decision during the term, but he certainly has no power after the expiration of the term to review his own acts. A review of a trial court decision is properly made by the Appellate Court. Now in this case the act does not provide that the Director may review his awards or his decisions, but specifically states that, at any time upon its own motion or upon application, the Bureau may review an award. It is true that this is placing a technical construction upon the act, but the Director certainly has no judicial power except by virtue of this act, and it should not be so construed as to increase the Director's power over that contemplated by Congress at the time of the enactment of this law. Giving to the Director an unprecedented power of making a decision, judicial in its nature, which shall be final, not reviewable by any court, is certainly clothing the Director with a power possessed by no trial court, and in the humble judgment of this court never so contemplated by Congress.

While it is not the purpose of this court to seek to review a final decision of the Director (if it can be determined what its final decision was), at the same time it is the contention of the defendant that, since this disability of the insured was contracted prior to his entry into the military service (as determined by the Director), it was not aggravated during his military service; that it resulted in total blindness which continued (according to the finding of the Director) from 1920 until the insured's death in 1925, was not compensable. In view, however, of these various findings of the Director, we find that compensation was actually paid to the insured from the date of his discharge to the date of his death; it having been determined by the Director or the Board that he was entitled to disability compensation at the time of his discharge, and that he was totally and permanently disabled on December 28, 1920.

Section 200 of the World War Veterans' Act, as amended by Act July 3, 1930, § 11 (38 USCA § 471), is here quoted in part: "For death or disability, resulting from personal injury suffered or disease contracted in the military or naval service on or after April 6, 1917, and before July 2, 1921, or for an aggravation or recurrence of a disability existing prior to examination, acceptance, and enrollment for service, when such aggravation was suffered or contracted in, or such recurrence was caused by, the military or naval service on or after April 6, 1917, and before July 2, 1921, by any commissioned officer or enlisted man, or by any member of the Army Nurse Corps (female), or of the Navy Nurse Corps (female), when employed in the active service under the War Department or Navy Department, the United States shall pay to such commissioned officer or enlisted man, member of the Army Nurse Corps (female), or of the Navy Nurse Corps (female), or women citizens of the United States who were taken from the United States by the United States Government and who served in base hospitals overseas, or, in the discretion of the director, separately to his or her dependents, compensation as hereinafter provided; but no compensation shall be paid if the injury, disease, aggravation, or recurrence has been caused by his own willful misconduct: Provided, That no person suffering from paralysis, paresis, or blindness shall be denied compensation by reason of willful misconduct, nor shall any person, who is helpless or bedridden as a result of any disability be denied compensation by reason of willful misconduct. * * * *"

This section states: "For death or disability, resulting from personal injury suffered or disease contracted in the military or naval service on or after April 6, 1917,

and before July 2, 1921, or for an aggravation or recurrence of a disability existing prior to examination, acceptance, and enrollment for service, * * * the War Department or Navy Department, the United States shall pay to such * * * compensation as hereinafter provided; but no compensation shall be paid if the injury, disease, aggravation, or recurrence has been caused by his own willful misconduct: Provided, That no person suffering from paralysis, paresis, or blindness shall be denied compensation by reason of willful misconduct. * * * "

According to the stipulation, the pleadings, and the brief of the defendant, it is contended that the disability of the insured was not incurred in military service or aggravated thereby, and therefore his disability was not compensable. The above section, however, just quoted, specifically provides that if the insured, at the time of his examination before acceptance and enrollment for service, was suffering from a disability, and there was a recurrence of said disability, and this recurrence was caused by military or naval service, that his disability is compensable, and, notwithstanding blindness resulted from a physical condition existing prior to enlistment, after this condition recurred during military service as a result of military service, even though the original disability was a result of willful misconduct, the act provides that this disability shall be compensable.

Under the stipulation, paragraph 16, it is stipulated: "That subsequent to the death of the insured and on August 3, 1928, it was determined by the Director of the U. S. Veterans' Bureau that the disability from which the insured suffered was not incurred in, aggravated by, or caused by military service."

I do not find, however, that the Director made a finding that, although the disease was contracted prior to his entry in military service, there was no recurrence of the disease caused by military service.

Furthermore, applying the cold letter of the law, the act, as amended July 3, 1930 (USCA, title 38, § 518), appears as entirely applicable in this case: "All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title: Provided, That the insured under such contract or policy may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 445 of this title on any prior contract or policy, and if found entitled thereto, shall, upon surrender of any subsequent contract or policy, be entitled to payments under the prior contract or policy: Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance. (As amended July 3, 1930, c. 849, § 24, 46 Stat. 1001.)"

If, under this act, the policy of insurance was actually reinstated on December 28, 1920, or considered as never having lapsed, and remained in full force and effect until November 30, 1923, said period being a longer period than six months, and the insured having been totally and permanently disabled during all of said time, is it not, under the amendment above set out, incontestable, except for fraud or nonpayment of premiums, etc.? See Sprencel v. U. S. (C. C. A.) 47 F.(2d) 501; U. S. v. Johnson (D. C.) 46 F.(2d) 549; U. S. v. Vance (C. C. A.) 48 F.(2d) 472; Hollrich v. U. S. (D. C.) 49 F.(2d) 445; Jordan v. U. S. (C. C. A.) 36 F.(2d) 43, 73 A. L. R. 312; Crawford v. U. S. (C. C. A.) 40 F.(2d) 199; Brown v. U. S. (D. C.) 29 F.(2d) 856; Beehler v. U. S. (C. C. A.) 40 F.(2d) 313.

This court is therefore of the opinion that at the time, 1923, and in 1928 that the bureau attempted to rerate the compensation of the insured, that the policy of insurance was incontestable; it having been in full force more than six months after a determination by the bureau that the insured was totally and permanently disabled; that neither the bureau nor the Director thereof thereafter had power to cancel the policy.

Judgment for the plaintiff; exceptions allowed defendant.