## UNITED STATES v. ELLISON et al.
### No. 3722.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

Before PARKER and NORTHCOTT, Circuit Judges, and MYERS, District Judge.

PARKER, Circuit Judge.

This is an appeal in a war risk insurance case in which plaintiffs contended that insured was totally and permanently disabled at the time he ceased paying premiums on his policy in 1919, and, if not then, on September 9, 1925. Plaintiffs contended that on the latter date insured was found to have been suffering from a compensable disability when his policy was allowed to lapse in 1919, and was awarded compensation in an amount sufficient to maintain his policy in full force under the provisions of the World War Veterans' Act 1924, § 305, as amended by 44 Stat. 799, § 16, as amended by 45·Stat. 971, § 17 (38 USCA § 516). The government denied the existence of total and permanent disability on either of the dates claimed by plaintiffs and by special pleas alleged (1) that the award of compensation to the insured had been reviewed on February 7, 1929, and that, upon such review, his disability at the time of the lapse of the policy was found noncompensable; (2) that insured had procured his admission into the army in 1918 by false representations and by concealing the fact that he had previously been discharged from the army as physically unfit for service; and (3) that the award of September 9, 1925, was made as a result of fraudulent concealment by insured of the fact that he had again enlisted in the army after being discharged as disabled. Demurrer to these pleas was overruled, and the case came on for trial on the merits. At the conclusion of the testimony, both sides moved for a directed verdict, and the trial judge found for plaintiffs, holding, however, that the insured was totally and permanently disabled on September 9, 1925, but not in 1919. The question upon this appeal is whether there was evidence to sustain this finding, or whether verdict should have been directed for the government.

The insured first enlisted in the army of the United States on April 4, 1917. While in the service he suffered an attack of pneumonia which resulted in heart and lung trouble, and he was discharged as six-twelfths disabled on February 20, 1918. He was anxious to go overseas with the army, and in June, 1918, attempted to enlist in Bluefield, W. Va., but was rejected. The next day he made application at Roanoke and was accepted. He saw service in France and in Russia, and was discharged in August, 1919.

Wilbur C. Pickett, Sp. Asst. to Atty. Gen. (George I. Neal, U. S. Atty., of Huntington, W. Va., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., and Lawrence A. Lawlor, Sp. Asst. to Atty. Gen., on the brief), for the United States.

D. M. Easley, of Bluefield, W. Va. (Jerome Katz and French & Easley, both of Bluefield, W. Va., on the brief), for appellees.

During the term of this second enlistment he was granted war risk term insurance in the sum of $10,000, upon which he paid no premiums after his discharge.

After his discharge from the army, insured suffered with his heart and lungs and undoubtedly had a partial disability of a very serious character; but the judge below has found, and we think correctly, that he was not totally and permanently disabled at the time his policy lapsed for nonpayment of premiums. He continued to grow worse, however, and was unable to do any work whatever after March, 1925. After that he spent a considerable part of his time in government hospitals and died of tuberculosis on June 6, 1932. On April 9, 1925, he made application for compensation, stating that he last entered military service in 1917 and was last discharged on February 20, 1918. Upon this application he was awarded compensation on September 9, 1925, by the Charleston, W. Va., rating board, on the following basis:

Temporary partial disability 32%—$25.60 per month 2/21/18 to 10/5/24.

Temporary partial disability 32%—$30.40 per month 10/16/24 to 4/22/25.

Temporary total disability—$95.00 per month 4/23/25 to 6/4/25.

Temporary partial disability 32%—$30.40 per month 6/5/25 to 9/8/25.

Permanent total disability—$100.00 per month 9/9/25 to ———.

On September 20, 1925 he was paid approximately $2,200 due him under this award.

Shortly after this payment, the Bureau discovered that insured had had a period of military service subsequent to his first discharge; and on April 12, 1926, as the result of an investigation conducted following this discovery, the award of September 9, 1925, was amended by the Charleston, W. Va., rating board by eliminating therefrom compensation during the period of the second enlistment, from June 25, 1918, to August 21, 1919, amounting to $252. Insured was advised that $22 of this amount was deducted from his March, 1926, check and that $20 per month would be deducted thereafter until the overpayment should be liquidated. The report of the rating board seems to have made other changes in the rating of the insured; but the letter of the Chief of the Claims Division to insured, which advised him of the amendment of the original award, sets forth the award as amended by items

and shows no other change. On November 9, 1926, insured was given another rating, this time by the Richmond, Va., rating board, amending the rating of April 12, 1926, so as to fix disability between the time of the first discharge and the second enlistment at 33 per cent. and between the time of the second discharge and April 9, 1925, at less than 10 per cent. This rating was amended by the Richmond rating board on March 28, 1927, and the disability less than 10 per cent. was held to embrace a longer period; but, upon review of the rating last mentioned by the Central Board of Appeals in New York City on June 29, 1928, the disability from June 25, 1918, to April 8, 1925, was fixed at 10 per cent. with higher ratings for succeeding months. Upon appeal from this rating to the Director of the Veterans' Bureau, the rating was given upon which the government relies, fixing the disability at less than 10 per cent. (noncompensable) between the date of the second discharge and April 8, 1925, and the date of total permanent disability as October 22, 1926.

With respect to the concealment by insured of the fact of the second enlistment, it appears that a record of this enlistment was in the file before the rating board at all times and that the board had actual knowledge of it at the time of the rating in April, 1926. It further appears that an officer of the government conducted an investigation prior to that rating for the purpose of determining whether the right of insured to compensation should be forfeited because of statements made by him in his application, and that a member of the board made the following statement to him: "Based upon actual contact with this claimant, I was not impressed with the fact that he would deliberately make any attempt to mislead the Board, and it may be due to the fact that a more careful search of the previous evidence in the file was not made."

In its brief filed in this court, the government does not controvert the sufficiency of the evidence to sustain the finding that the insured was totally and permanently disabled on September 9, 1925, but contends (1) that the finding of the Director of the Veterans' Bureau of February 7, 1929, fixing disability at less than 10 per cent. from the period of the second discharge until 1925, establishes that nothing was due insured for compensation at the time the policy lapsed; (2) that the finding of the Director that total permanent disability did not begin until October 22, 1926, is binding upon the court and defeats the right of recovery

under the policy, as nothing was due insured by the government on account of compensation at that time; and (3) that the claim of plaintiffs, being based on a reinstatement of the policy under the statute because of the award of compensation, is cognizable solely by the Veterans' Bureau and that the court below was without jurisdiction to entertain it. Another point raised on the hearing in this court is that the claim is barred by the statute of limitations.

The rights of plaintiffs are grounded upon the provisions of section 305 of the World War Veterans Act 1924 as amended (38 USCA § 516) which provides for the reinstatement of policies of war risk insurance where insured at the time of the lapse of the policy was suffering from a compensable disability. That section is as follows:

"Where any person has, prior to June 7, 1924, allowed his insurance to lapse, or has canceled or reduced all or any part of such insurance, while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, chapter 16, Forty-first Statutes, page 371, would purchase if applied as premiums when due, shall not be considered as lapsed, canceled or reduced; and the United States Veterans' Bureau is hereby authorized and directed to pay to said soldier, or his beneficiaries, as the case may be, the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law. * * *"

■ As the award of September 9, 1925 established that insured was suffering from a compensable disability at the time of the lapse of his policy, and, as the uncollected compensation awarded was more than sufficient to pay all the premiums which had fallen due thereon, it seems clear that the result of the award of that date was to reinstate the policy just as though it had not lapsed, except that the amount of the unpaid premiums with interest was deductible from the amount payable thereunder. The finding by the court that insured was to-

tally and permanently disabled at the time of the award, settles the rights of plaintiffs under the policy; for it matured when insured became totally and permanently disabled, if in force at that time, and no further payment of premiums was required.

■ And we do not think that the rights of insured under the policy were defeated, or in any wise affected, by the subsequent action of the Bureau in which the findings as to compensable disability were changed. It is to be noted that the award of September 9, 1925, was not appealed and changed on review by higher officials in the Bureau, and there is no ground for the contention that the amount awarded was paid by oversight or inadvertence pending review. That order was not subjected to review on appeal, and the amount awarded thereunder was paid promptly. After the payment, however, a new investigation was had upon the discovery of the second period of military service and changes were made in the original award; and the matter finally came before the Director on a review of these orders. In other words, the original order was not modified on appeal, but was changed on review pursuant to statute. There can be no question as to the right of the Bureau to make such change; but it is expressly provided that same shall not be retroactive. Section 205 of the World War Veterans' Act 1924, 43 Stat. 622, 38 USCA § 494, which seems to be conclusive of the matter, is as follows:

"Upon its own motion or upon application the bureau may at any time review an award and, in accordance with the facts found upon such review, may end, diminish, or increase the compensation previously awarded, or, if compensation is increased, or if compensation has been refused, reduced, or discontinued, may (subject to the provisions of section 499 of this title) award compensation in proportion to the degree of disability sustained as of the date such degree of disability began, but not earlier than the date of discharge or resignation. Except in cases of fraud participated in by the beneficiary, no reduction in compensation shall be made retroactive, and no reduction or discontinuance of compensation shall be effective until the 1st day of the third calendar month next succeeding that in which such reduction or discontinuance is determined."

■ As the reduction in compensation resulting from the change made in 1929 was not retroactive, it follows that on Septem-

ber 9, 1925, as a result of the award that day made, insured was entitled to compensation in the sum of approximately $2,200 for a compensable disability existing at the time the policy lapsed for nonpayment of premiums, notwithstanding the change made by the award of 1929. To hold that the reinstatement of the policy which had resulted from the award of this compensation was nullified by the order of 1929, would be to give that order a retroactive effect in contravention of the statute. The argument that the right to insurance should be divested by the order of 1929 but that other rights which had vested under the order of 1925 should be left undisturbed has nothing to commend it from the standpoint either of logic or of public policy. It was evidently the purpose of Congress, in permitting the Bureau to make changes in its findings and awards, to confine the effect of such changes to the future, and not to permit them to disturb rights which had become fixed under awards already entered; and it was hardly contemplated that insurance which had been reinstated by one order of the commission should be forfeited by a subsequent order. As pointed out by Judge Vaught in Bainbridge v. U. S. (D. C.) 55 F.(2d) 244, 248, the policy, once reinstated, is made incontestable by express provision of the statute, except for causes not here applicable.

■■ The fact that insured did not disclose his second enlistment in his application upon which the award of September 9, 1925, was entered, is immaterial in the situation here. The only retroactive order based upon that matter was the order of April 12, 1926, which merely required that the government be reimbursed for compensation paid during the period of the second enlistment. The Bureau did not find that the insured had been guilty of fraud because of failure to disclose his second enlistment nor did the court below. Certainly there was nothing in the evidence to compel a direction of a verdict for the government on that ground; and the only question which we are reviewing or can review on this appeal is whether or not verdict should have been directed for the government.

■■ We see nothing either in the contention that the court is without jurisdiction because the action is on a policy reinstated under the statute upon an award of disability compensation, or that the court is bound by the finding of the Bureau on the question of total and permanent disability. Jurisdiction has been conferred upon the courts to hear and determine all claims arising under these war risk insurance policies where there has been a disagreement between the claimant and the Bureau. 38 USCA § 445. And, while the finding of the Bureau as to the right of an insured to compensation on account of disability is binding upon the courts [Silberschein v. U. S., 266 U. S. 221, 225, 45° S. Ct. 69, 69 L. Ed. 256, Crawford v. U. S. (C. C. A. 2d) 40 F.(2d) 199], the effect of such finding upon the reinstatement of the policy is a matter for the courts to determine, as is also the question as to whether the insured was or was not at that time dead or totally and permanently disabled [U. S. v. Knott (C. C. A. 6th) 69 F.(2d) 907; U. S. v. Hendrickson (C. C. A. 10th) 53 F. (2d) 797, 799, 800; U. S. v. Vance (C. C. A. 8th) 48 F.(2d) 472; U. S. v. Crowell (C. C. A. 8th) 48 F.(2d) 475; Sprencel v. U. S. (C. C. A. 5th) 47 F.(2d) 501; Hollrich v. U. S. (D. C.) 40 F.(2d) 739; Hegg v. U. S. (D. C.). 21 F.(2d) 622; 35 Opinions of Atty. Gen. 241]. As was said by Judge McDermott, speaking for the Circuit Court of Appeals of the Tenth Circuit in the Hendrickson Case, supra:

"The appellee here is not asking for compensation; he is seeking an adjudication of his rights under his insurance contract. Section 305 provides that his policy does not lapse if he 'becomes or has become permanently and totally disabled' while he has enough uncollected compensation to pay his premiums. Whether he has 'uncollected compensation' depends solely upon the rating of the bureau and the fact of its nonpayment; but whether, during that period of the government's delinquency, he becomes permanently and totally disabled is a question of fact for the courts to determine. The bureau determines the fact of disability for purposes of compensation; the courts determine it for purposes of insurance. This distinction runs all through veterans' relief legislation, and section 305 deals with the rights of a veteran under his insurance policy, and not with his right to collect compensation. * * * Nor is there any reason why this court should eliminate from the comprehensive jurisdiction conferred by section 19, those cases where the plaintiff meets the defense of lapsation by a reliance upon section 305."

■ And we see nothing in the contention, made for the first time in this court, that the action of plaintiffs was not instituted within the time allowed by statute, and that

869

the court below was without jurisdiction for that reason. The cause of action because of total and permanent disability accrued September 9, 1925, according to the finding of the judge. Insured had the matter up with the Bureau time after time and filed his last claim with it on July 3, 1931, which was rejected on November 28, 1932. Suit was instituted December 2, 1932. When the time when the claim was pending before the Bureau is excluded, as it must be under the statute, it is seen that the suit was brought well within the six-year period allowed. 38 USCA § 445. It is said the claim filed with the Bureau was based upon total and permanent disability having occurred in 1919; and it is argued that pendency of such claim would not toll the running of the statute against a claim of total and permanent disability occurring in 1925. But we think that, on the facts here, this contention is hypertechnical. The claim filed with the Bureau is not in the record, as no point of the statute of limitations was made in the court below. It appears, however, that Senator Glass wrote the Bureau in behalf of insured on April 23, 1929, calling attention to the rating of total and permanent disability on September 9, 1925, and to the fact that insured's policy was entitled to reinstatement on account of accumulated back compensation. And it further appears that the insured himself filed suit in November, 1930, wherein he alleged that he had been totally and permanently disabled since September 9, 1925, and that on January 26, 1931, he filed an amendment to his petition in that suit wherein he made the following allegation:

"Petitioner avers that his war risk insurance in the sum of $10,000.00 was, on September 9, 1925, by operation of law, revived and became in full force and effect and is now in full force and effect, and at said time he made claim to the government for the payment of the same; that his said claim for said insurance has been under consideration by different Bureaus and departments from that time up until the ——— day of ———, 1929; that his said claim for said insurance has been refused and denied by the government and that there is a disagreement between him and the representatives of the government growing out of his claim for said insurance on account of which disagreement the government refuses to pay him said insurance, or any part thereof."

What happened to the suit of insured is not shown in the record, but the pleadings therein were put in evidence in the court below; and, in view of their allegations, the letter of Senator Glass, and other testimony as to claims filed with the Bureau by insured, we clearly would not be justified in ordering the suit dismissed for lack of jurisdiction on the ground that the claim filed did not embrace one for total and permanent disability occurring in 1925, even if we had power to do so on a point raised at this stage of the proceedings.

In addition to this, we think that, if the government intended to rely on the statute of limitations, it should have raised the question in the court below. Where the statute provides, as does this, that the running of limitations is to be suspended during certain contingencies which can be shown on the trial if the question of limitations is raised, common fairness demands that, if the government intends to rely upon limitations, it should raise the question there or be precluded from raising it. Such a question is like that of disagreement between the claimant and the Bureau, which is also jurisdictional; and as to it the Eighth Circuit has held, and we think properly, that it cannot be raised for the first time in the appellate court. U. S. v. Kiles (C. C. A. 8th) 70 F.(2d) 880, 881.

It is true that the institution of the suit within the time permitted by statute, like the showing of disagreement with the Bureau, is a condition precedent to the exercising of jurisdiction by the court. But where the court has general jurisdiction of the parties and the subject-matter, and jurisdiction of the particular cause is dependent upon the existence of facts which, if they are disputed, can probably be easily proven, such a point is waived by failure to raise it by timely objection in the trial court. U. S. v. Edwards (C. C. A. 8th) 23 F.(2d) 477, 480; 15 C. J. 845. As said by Judge Gardner in the Kiles Case, supra, "a total want of jurisdiction of the subject-matter cannot, of course, be waived, but where the court has general jurisdiction of the subject-matter, and the jurisdiction of a particular case is dependent upon the existence of certain facts, the jurisdiction may be waived by a failure to make timely and specific objections."

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.