## UNITED STATES v. KILES.
### No. 9690.

Circuit Court of Appeals, Eighth Circuit.
April 11, 1934.

William L. Vandeventer, U. S. Atty., and Claude E. Curtis, Asst. U. S. Atty., both of Kansas City, Mo., Will G. Beardslee, Sp. Asst. to Atty. Gen., and Wilbur C. Pickett, Atty., Department of Justice, of Washington, D. C., for the United States.

Goldman & Daley, of Kansas City, Mo., for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought to recover on a contract of war risk insurance. Right of recovery is asserted on the ground that the

assured became permanently totally disabled November 1, 1928, during the life of the policy, and not on the ground that the insured died during the life of the policy. Insured died of pneumonia August 17, 1929. It is alleged that insured's total permanent disability resulted from "extreme nervousness, insanity, organic and functional nervous diseases, arthritis, and general debility." The answer is in the nature of a general denial.

At the close of all the testimony the government moved for a directed verdict on the grounds that "as a matter of law the plaintiff has not proved * �°ʳ ʰ insurance contract in force on the date alleged in the petition as amended, November 1, 1928, and ⁰ʳ ˣ * as a matter of law, he has not proved a prima facie case of permanent total disability on that date." This motion was denied and the case was sent to the jury, resulting in a verdict in favor of plaintiff, and from the judgment entered thereon this appeal has been perfected.

It is here contended that (1) there was no substantial evidence that the insurance was in force November 1, 1928; (2) there was no evidence of a valid disagreement between the United States veterans' bureau and the insured, or the person claiming under the contract of insurance; and (3) there was no substantial evidence of total permanent disability on November 1, 1928, or any other time while the contract of insurance was in effect.

■ It was conceded on the trial that the insurance premiums had been paid until May, 1927. On June 27, 1927, the insured converted his war risk insurance into a government life insurance policy, the amount of the policy being reduced from $10,000 to $5,000. Appellant urges that certain receipts or other similar evidence or records of payment that plaintiff introduced were ambiguous. Payment of the premiums from August, 1927, to October, 1928, are admitted, but appellant contends that there is no evidence that the premium for the month of July, 1927, was paid within the thirty-day grace period. A receipt was produced by plaintiff from the United States veterans' bureau, which bears the notation, "Payment received July 18, 1927, A. P. Carson, Insurance Cashier." Plaintiff, who is a brother of the insured, testified that he made payment of the premium in the usual regular manner for July, and that he received the receipt above referred to in recognition of that payment. There is no evidence in the record contradicting his testimony, and the court submitted to the jury the question as to whether or not payments of premiums were made so as to prevent the lapse of the policy. The jury by its verdict necessarily found that such payments were made, and there is substantial evidence sustaining this finding of the jury, so that the defendant was not entitled to a directed verdict on the ground that the policy was not in force at the time of the insured's alleged total permanent disability.

■ It is earnestly asserted by appellant that there was no evidence of a disagreement between the bureau and the insured, or the person claiming under the contract of insurance. This action is governed by the Act of July 3, 1930, § 4, amending section 19 of the World War Veterans' Act 1924 (38 USCA § 445). Such a disagreement is a necessary condition precedent to the exercise of jurisdiction by the court. United States v. Collins (C. C. A. 4) 61 F.(2d) 1002; Manke v. United States (C. C. A. 9) 38 F.(2d) 624. The District Court, however, had general jurisdiction of the parties and of the subject-matter, but the right to relief was dependent upon the fact of the existence of a disagreement. A total want of jurisdiction of the subject-matter cannot, of course, be waived, but where the court has general jurisdiction of the subject-matter, and the jurisdiction of a particular case is dependent upon the existence of certain facts, the jurisdiction may be waived by a failure to make timely and specific objections. United States v. Edwards (C. C. A. 8) 23 F.(2d) 477. Here, confessedly, the court had jurisdiction if a disagreement existed. In its motion for a directed verdict, the defendant specifically stated the grounds upon which it asked the court to direct a verdict in its favor. It did not urge in that motion that there was no evidence of such disagreement. Had it done so, the court might very properly have permitted plaintiff to reopen the case to supply the necessary proof if such proof were lacking, and the question, not having been presented in the lower court, cannot now for the first time be raised in this court. Falvey v. Coats (C. C. A. 8) 47 F.(2d) 856, 89 A. L. R. 1; Adams v. Shirk (C. C. A. 7) 117 F. 801; Hill v. Walker (C. C. A. 8) 167 F. 241, 257.

In the last-cited case, it was held that to justify a dismissal where jurisdiction is properly laid in the complaint, the question must be directly raised in the trial court and opposing counsel given an opportunity to rebut the evidence showing that the court was

without jurisdiction. In the course of the opinion it is said:

"Here the jurisdictional facts are properly alleged in the complaint, and there is no showing in the evidence which can create even a suspicion of fraud upon the jurisdiction of the court, and the objection is raised in an appellate court by a defeated party who presented the issue obscurely under a general denial and refrained from directly raising the question in the trial while he speculated upon the result of the litigation. Under such circumstances, surely, this court is not justified in reversing the judgment when there is a general finding supporting jurisdiction."

█ It remains to consider the more serious question as to whether there was substantial evidence of total permanent disability at or prior to November 1, 1928. The insurance contract obligated the government to indemnify in the event of death or permanent total disability during the life of the policy. As the policy had lapsed before the death of the insured, it was incumbent upon plaintiff to establish total permanent disability before the lapse of the policy. The contract does not cover total temporary nor partial permanent disability. Eggen v. United States (C. C. A. 8) 58 F.(2d) 616; United States v. Pullig (C. C. A. 8) 63 F.(2d) 379; United States v. Hill (C. C. A. 8) 62 F.(2d) 1022; United States v. Nickle (C. C. A. 8) 70 F.(2d) 873; Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492.

The claim here is that insured was suffering from an impairment of mind, which totally and permanently disabled him. Lay witnesses testified to insured's excitable nervous temperament, to conversations in which he laid claim to great enterprises and undertakings, and claimed that his relatives were against him; that his conversation was rambling; that he did not adhere to one subject when he was conversing, but would pass from one subject to another; that he could not carry a chain of thought; that he could not stay at work any length of time, and that he was not right mentally; that he suffered from hallucinations; that he claimed to be a great orator and if his enemies would permit he would become a millionaire, but that he was prevented and impeded by others from carrying out his plans; that in the late winter and early spring of 1928, he complained of his head hurting him badly. Certain of these lay witnesses testified that insured was crazy, and that he was insane. One medical witness, a Dr. R. J. Brennan, testified for plaintiff. On direct examination

this witness testified that he treated insured over a period of some two years; that insured was in bed from October, 1927, to January 19, 1928, with a recurrence of an ailment which he had diagnosed as chronic arthritis and a spinal infection commonly known as syphilis. He then testified:

"The spinal or hip trouble was principally all I ever treated him for until his last illness. He died from pneumonia. * * * I had it in my head all the time he had syphilis. Syphilis can be classified as a general infection which I really think caused his rheumatism and he probably had a syphilitic condition of the brain with exaggerated reflexes at that time. * * * It is called central syphilis I suppose; syphilis of the central nervous system. Syphilis of the central nervous system is usually not curable. This condition was present during the period he was under my care; the period I treated him."

Had this been his only testimony, it would probably have been sufficient to sustain the verdict because he testified that this condition was present in January, 1928, and that it was incurable. On cross-examination, however, the witness' recollection was refreshed by referring to a medical examiner's report which he had made and signed August 24, 1928. In that report, the answers, which were in the doctor's own handwriting, indicated that on that date he examined the insured and reported that the insured never had had syphilis, gout, or rheumatism. Confronted with this report, and refreshing his recollection therefrom, the witness testified as follows:

"Q. Does that refresh your recollection, Doctor, as to whether it was after that he had syphilis or before, that is after August 24, 1928? A. Well, it must have been after. You see this is 1928.

"Q. This is August 24, 1928. A. I never had a positive diagnosis of it. During the treatments I was suspicious of that but I never did conclude, I guess, according to this he had it although I treated him along those lines, which we do lots of times, doctors of medicine, and the patient gets more or less well; you just forget about it.

"Q. Yes. Well, anyway was on August 24, 1928— A. (Interrupting): He didn't have it.

"Q. That he didn't have syphilis at that time? A. That is true, yes. He had apparently fully recovered when I made this report because I had nothing in mind then to make me think anything wrong with him.

"Q. Now, Doctor, on your examination August 24, 1928, there you didn't find anything radically wrong with this man at all, did you? A. No, he had a good record here."

It cannot be said that this testimony given on cross-examination went only to the credibility of the witness or the weight to be given to his testimony. The testimony there given corrects, retracts, and entirely nullifies the testimony given on direct examination to the effect that the insured, in January, 1928, was suffering from syphilis of the central nervous system or from any other incurable disease. We must conclude that if the doctor found this condition, it was at least at some time after August 24, 1928. The policy, it will be recalled, lapsed on November 1, 1928, and it was incumbent upon the plaintiff to show that insured's affliction was total and permanent before that date, and this medical testimony does not show the presence of any incurable disease totally disabling the insured before November 1, 1928.

There was, as has been observed, certain lay testimony indicating that the insured was "mentally unbalanced"; that he was suffering from "hallucinations"; that he "was insane," and other like testimony. The testimony was sufficient to show that the insured was totally disabled, but did it show that he was permanently disabled?

Passing for the moment the question of the probative force of the testimony of the lay witnesses, and assuming that it was sufficient to show that the insured was suffering from mental derangement or insanity, still it does not appear what kind or degree of insanity afflicted the insured. That term is a very uncertain, ambiguous, and flexible one, and both legal and medical authorities recognize that there are different kinds and degrees of insanity (Rodney v. Burton, 4 Boyce [27 Del.] 171, 86 A. 826; Clarke v. Irwin, 63 Neb. 539, 83 N. W. 783; Hopps v. People, 31 Ill. 385, 83 Am. Dec. 231); that the disease is as varied in intensity and shades of difference as is human character (Connecticut Mut. Life Ins. Co. v. Lathrop, 111 U. S. 612, 4 S. Ct. 533, 28 L. Ed. 536; Denson v. Beazley, 34 Tex. 191). It may be total, complete, general, or partial in character, and it may be either permanent or temporary in duration. State v. Jack, 4 Pennewill (Del.) 470, 58 A. 833. So, while insured's mental affliction totally disabled him, it may nevertheless have been curable and temporary in duration, and it must be remembered that the insured did not die from this afflic-

tion. In the absence of proof as to its character, we cannot presume that the affliction was permanent.

In this state of the record, it was error for the court to deny defendant's motion for a directed verdict, and the judgment appealed from is therefore reversed.