## NATIONAL LABOR RELATIONS BOARD v. RICHTER'S BAKERY.

### No. 10695.

Circuit Court of Appeals, Fifth Circuit.

Feb. 8, 1944.

Rehearing Denied March 1, 1944.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Helen F. Humphrey, Senior Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

Karl H. Mueller, of Fort Worth, Tex., and J. C. Hall and A. V. Knight, both of San Antonio, Tex., for respondent.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., the National Labor Relations Board on petition to this Court seeks a decree enforcing its order entered against the respondent, upon charges filed by the Bakery & Confectionery Workers' International Union of America, Local No. 478, a labor organization affiliated with the American Federation of Labor, hereafter referred to as the Union.

The Board's order is based upon its findings that the respondent had refused to bargain collectively with the Union, in violation of Section 8(5) of the National Labor Relations Act; and had refused to reinstate sixteen strikers, and had discriminatorily discharged an employee named Demmer, in violation of Section 8(3); and was guilty of interference, restraint, and coercion, in violation of Section 8(1) of the Act.

The order entered required respondent:

1. To cease and desist from these unfair labor practices;

2. Upon request, to bargain collectively with the Union;

3. To reinstate with back pay fifteen of the strikers and Demmer;

4. To make whole striker Terrell and reinstate him upon application within a fixed period following his discharge from the Navy; and

5. To post appropriate notices.

The only contested issues are (1) is the Act applicable to respondent, and (2) if so, are the Board's findings that Demmer was discriminatorily discharged supported by substantial evidence?

### 1.

The principal facts relevant to the jurisdictional issue are: Respondent is a Texas corporation, engaged in San Antonio, Texas, in a general bakery business. Its stock is equally divided among four Richter brothers and their mother. The four brothers also are equal owners of the stock of two other bakery corporations in Texas. One is Richter's Baking Company, located in Corpus Christi, Texas, and the other is Austin Baking Company, located in Austin, Texas. The four brothers and their mother also own 80 per cent of the stock in a fourth Texas bakery corporation, The Colonial Cake Company, of San Antonio, Texas. The aggregate gross sales of these concerns for the year 1941 exceeded $1,500,000. During the year ending February 28, 1942, they purchased raw

materials valued in excess of $719,000, of which over 30 percent, valued at more than $220,000, were shipped to them from points outside the State of Texas. Of these raw materials, those used by respondent aggregated in value $236,968.18, of which more than 25 percent, valued at $60,150.13, came from sources outside the State. These out-of-State purchases consisted of 103 separate transactions with vendors in 11 different states, from New York to California.[1]

Tested by the principles enunciated by this and other courts, respondent, upon the foregoing facts, is clearly subject to the Act. The fact that out-of-State purchases were relatively small and its products were sold and consumed locally is not controlling. In the Fainblatt case, the United States Supreme Court held:

" * * * Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis." [2]

In the Suburban Lumber Company case, the Third Circuit Court held:

"De minimis in the law has always been taken to mean trifles—matters of a few dollars or less. Here, the Suburban's interstate purchases in a year when the retailer lumber business was at its nadir amounted to $150,000. Such a sum surely cannot be considered in the category of de minimis." [3]

In the Gulf Public Service Company case, this Court held:

"Congress undoubtedly had the power to bring within the field of Congressional supervision, all direct interference with interstate commerce, no matter how slight. Unless therefore, we can find in the Act, some qualifying term which reduces its scope to less than the whole, we must, upon the question of the power of the board,

construing the Act as it has been construed, hold that it extends to any and all enterprises, without regard to their magnitude, in which labor troubles might reasonably be said to have the probable effect of directly interfering with the free flow of any interstate commerce." [4]

In the Newport News Shipbuilding & Dry Dock Co. case, the Fourth Circuit Court held:

"There can be no difference in principle between the case in which manufacture precedes and that in which it follows interstate commerce. If the flow of commerce is obstructed by labor disputes, it makes no difference from which direction the obstruction is applied." [5]

We concur in the Board's ruling maintaining its jurisdiction.

### 2.

■ Respondent contends that the Board's finding that Adolph Demmer was discharged, in violation of Section 8(3) and (1) of the Act, is based on surmise and suspicion and is not supported by any substantial evidence. The Board, as the record disclosed, discredited and rejected the testimony of some of respondent's witnesses. The accepted facts as to Demmer's discharge on March 23, 1942, are: He had entered respondent's employ in July 1927, as a benchman, and within six months was made oven foreman, holding that position until 1930 when he became a shift foreman. In 1934, he was promoted to shop foreman, in which position he was directly responsible to Superintendent Richter. Richter testified that Demmer had worked under him since 1931 and that he had been responsible for Demmer's promotion. Under the general supervision of Superintendent Richter, Demmer had been responsible for the operation of respondent's bakery, including the direction both of the production process and of the employees working thereon. For substantial periods of time when Otto Richter was absent, Demmer would carry on alone with apparent success.

1 Upon the facts stated and related facts not stated, the Board found that all four corporations operated as a "single integrated enterprise". Since such inference does not contribute to our decision, we express no opinion.

2 N. L. R. B. v. Fainblatt, 306 U.S. 601, 607, 307 U.S. 609, 59 S.Ct. 668, 672, 83 L.Ed. 1014.

3 N. L. R. B. v. Suburban Lumber Co., 3 Cir., 121 F.2d 829, 832.

4 N. L. R. B. v. Gulf Public Service Co., 5 Cir., 116 F.2d 852, 853, 854, 855.

5 Newport News Shipbuilding & Dry Dock Co. v. N. L. R. B., 4 Cir., 101 F.2d 841, 843, affirmed in this respect, 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219.

During February of 1941, John P. Simmons, an International representative of the Union, came to San Antonio. Early in March, Simmons on two occasions telephoned Demmer and explained that he was trying to organize the bakers in San Antonio and had heard that Demmer was interested. Demmer told Simmons that organizing was a good idea but a tough job. He pointed out that he had a good job as a foreman and as such was supposed to be on the side of the Company; hence, he could not take any part in organizing, although he was in sympathy with the Union. Later in March, Otto Richter, respondent's superintendent and Demmer's immediate superior, called Demmer into his office and questioned him about the organization of the Union, having learned that organizational activities were taking place in San Antonio. When Demmer admitted that the organizer had been in touch with him, Richter asked Demmer "Why in the hell" he had not told him about it. Demmer replied that he did not think it was any of Richter's business. Richter asked Demmer what the organizer had said and Demmer related the conversation. Richter told Demmer that if Simmons called him again by all means to come and tell him about it.

There is much evidence of the hostile attitude of respondent and its officials toward unions which clearly established an anti-union policy on its part. When its employees organized the Union, respondent refused, upon being telephoned by the Union representatives to meet these representatives to discuss a contract. A strike resulted, during which Demmer maintained a friendly attitude and friendly contacts with the leaders who had organized the Union and were conducting the strike.

There was direct evidence by respondent's officers that Demmer was discharged because his services were unsatisfactory; that he failed to do the job that was required of him; that he would not work and would not cooperate in work with Hopstetter, who was his superior; that he was lacking in executive ability in getting performance out of his subordinates; that he did not know enough about the operation of the new plant into which respondent had moved; and that Demmer's dismissal was further due to Hopstetter's desire for a single capable man to serve as assistant superintendent, instead of two foremen. It was also said that the new plant was equipped with certain machinery with which Demmer was not familiar. It was shown, however, that when it was being put into operation, Demmer worked as long as 78½ hours in one week and averaged 67 hours a week during the first month.

No useful purpose would be served in stating in detail the testimony of witnesses bearing upon these several matters. It is clear that Demmer was in the employ of respondent for a number of years, and insofar as the record shows, gave entire satisfaction; and that the complaints urged against him had to do with a time concurrent with activities occurring in respondent's plant looking toward organizing respondent's employees into a union.

Before the Board respondent referred to a number of incidents occurring in the old plant as contributing to its decision to discharge Demmer. Thus, excessive fermentations of sponges in 1939 were pointed to; his loss of temper, and in the presence of other employees calling one of them a "damn liar"; assigning menial work to a new employee whom he had been instructed to train for supervisory work; inaccuracies sometimes found in his records of the time of departure of employees; and the spending of too much time sitting on the platform outside the plant instead of devoting his time to his duties. It was admitted, however, that many of these matters were never brought to Demmer's attention, and it is in evidence that following his discharge respondent gave him a letter of recommendation which read:

"To Whom It May Concern:

Mr. Adolph Demmer has been in our employ for over fifteen years as Shop Foreman in our Production Department. He is very capable, willing, and very thorough in this work. Any courtesy shown him will be greatly appreciated.
Very truly yours,
Richter's Bakery,
By R. W. Richter."

The Trial Examiner, whose findings of fact and conclusions were adopted by the Board, heard and saw the witnesses. We are not prepared to say that upon this evidence a reasonable mind could not have found as did the Trial Examiner and Board that Demmer's discharge was discriminatory[6] and that the reason therefor was respondent's distrust of Demmer because he

---

[6] Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

was disloyal to respondent in its campaign against the Union. We think the Board's findings of fact are supported by substantial evidence.

The petition of the Board is granted and a decree enforcing its order will be entered.