NATIONAL LABOR RELATIONS BOARD
v. VAN DE KAMP'S HOLLAND–
DUTCH BAKERS, Inc.
No. 10949.

Circuit Court of Appeals, Ninth Circuit.
Jan. 7, 1946.
Decree Amended March 26, 1946.
Rehearing Denied March 29, 1946.

David A. Morse, Gen. Counsel, NLRB, Malcolm F. Halliday, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Joseph B. Robison and Eleanor Schwartzbach, Attys., NLRB, all of Washington, D. C., and Maurice J. Nicoson, Regional Atty., NLRB, of Los Angeles, Cal., for petitioner.

Guy T. Graves, of Los Angeles, Cal., for respondent.

Before STEPHENS, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

Petitioner, hereinafter called the Board, issued a complaint against respondent, hereinafter called the Company, alleging the latter was engaged in unfair labor practices within section 8(1) and (5) of the National Labor Relations Act.[1] The complaint was issued on a charge filed by a bakery driver's local union of the A. F. of L. Brotherhood of Teamsters, hereinafter called the Union.

Following two hearings, the Board issued an order, pertinent parts of which follow:

"[The Company shall:]

"1. Cease and desist from:

"(a) Refusing to bargain collectively with Bakery Drivers Local 276, International Brotherhood of Teamsters, as the exclusive representative of the respondent's truck drivers at its Los Angeles plant, in respect to rates of pay, wages, hours of employment, and other terms and conditions of employment;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

■ The Board now petitions for enforcement of its order.

The Company contends first that the National Labor Relations Act is not applicable to it, since it is not engaged in interstate commerce. This contention is without merit.

The Company, with its main plant at Los Angeles, California, manufactures and sells at retail general bakery products. Approximately thirty per cent of the materials it buys are shipped to it from points outside California. Its finished products, which have an annual approximate value of $5,000,000 have been sold wholly within the Los Angeles area since December 1942. In 1941 and 1942 the Company shipped supplies and materials worth approximately $2,600 each year to its Seattle plant, but this practice was discontinued in December 1942. Finished products valued at $1,500 were shipped to customers outside California prior to September 1942, but this practice was discontinued thereafter. The unfair labor practices complained of took place in 1941 and 1942. The Company argues that because the percentage of goods shipped out of California is so small this court should apply the maxim de minimis. It is immaterial whether or not we do so. The fact that approximately thirty per cent of the materials the Company uses are shipped to it from outside California is sufficient to bring the Company within the Act.[2]

It is the intent of Congress, expressed in Section 1 of the Act, that the free flow of commerce must not be interrupted, obstructed, or burdened by industrial strife or unrest. Congress intended to eliminate, by protecting workers in their various

---

[1] 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

[2] N.L.R.B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N.L.R.B. v. Richter's Bakery, 5 Cir., 140 F.2d 870, 871; N.L.R.B. v. Schmidt Baking Co., 4 Cir., 122 F.2d 162; N.L.R.B. v. Suburban Lumber Co., 3 Cir., 121 F.2d 829; Brandeis & Sons v. N.L.R.B., 8 Cir., 142 F.2d 977, 981.

rights enumerated in the Act, the causes of substantial obstructions to the free flow of interstate commerce. It matters little where the obstruction to that free flow of commerce occurs. Here, labor strife in the Los Angeles plant of the Company would interfere with and obstruct the free flow of raw materials coming into California from other states, and it is just such an obstruction that Congress intended to prevent by the passage of this Act.

As the Fourth Circuit Court of Appeals said in New Port News Shipbuilding & Dry Dock Co. v. N.L.R.B., 101 F.2d 841, 843, (affirmed 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219):

"There can be no difference in principle between the case in which manufacture precedes and that in which it follows interstate commerce. If the flow of commerce is obstructed by labor disputes, it [makes] no difference from which direction the obstruction is applied."

The out of state purchases by the company, totalling as they do, thirty per cent of products used by it, bring the Company within the jurisdiction of the Board, notwithstanding virtually all finished products are sold in Los Angeles.[3]

The Board's trial examiner found that the Union, on July 11, 1942 and at all times thereafter, was the duly designated representative of a majority of the Company's drivers, an appropriate unit for collective bargaining, and that the Company refused to bargain collectively with the Union. His findings were adopted by the Board.

The Company contends [1] that the Union was not the representative of a majority of the drivers because some of the Union authorizations signed by the drivers had been obtained by fraud and misrepresentation, and because some of the drivers withdrew their authorization of the Union, and, [2] that the Union never requested the Company to bargain collectively.

Without reciting the evidence, it is sufficient to say that the record discloses active opposition by the Company to the unionization of its drivers by an "outside" union and active encouragement of a "company" union. The record also discloses substantial evidence to support the Board's findings that the Company refused to bargain collectively with the Union.

With respect to the fraud and misrepresentations alleged by the Company, it is argued that the drivers had an understanding among themselves that they would not join any "outside" union until a majority of the drivers voted at a meeting to join such a union. The Company further contends that certain of the drivers obtained signatures to the union authorization slips by the false representation to the other drivers that a majority had already signed for the Union.

The Company had ample opportunity to present its contentions as to this alleged fraud at a second hearing before a second trial examiner and a conflict in testimony developed. The Board did not credit the testimony of the Company's witnesses as to the misrepresentations and found nothing in the record which affected "the validity of the Union designations".

The Company also argued that enough drivers later withdrew from the Union to destroy the Union's majority. This argument was also fully heard and the trial examiner, who saw and heard the witnesses, found against the Company. He found that the repudiation of the Union was "manifestly due to the improper and coercive conduct of the respondent [the Company] and had no bearing upon the question of whether the Union represented a majority of the employees."

These findings were also adopted by the Board and, supported as they are by substantial evidence in the record, are binding on us. It is ordered that paragraph 1 (a) of the cease and desist order be complied with by the Company.

Paragraph 1 (b) is the familiar omnibus order restraining all other violations of the Act, and as such it is within the rule of the case of N.L.R.B. v. Express Publishing Company, 312 U.S. 426, 61 S. Ct. 693, 85 L.Ed. 930. Since there has been no "clear determination by the Board of an attitude of opposition to the purposes of the Act to protect the rights of employees generally", (May Department Stores Co. v. N.L.R.B., 66 S.Ct. 203, 213), paragraph 1 (b) will be stricken from the Board's order.[4] The reference to paragraph 1 (b) in paragraph 2 (b), requiring posting of notices, will also be stricken.

---

[3] N.L.R.B. v. Richter's Bakery, supra, Note 2.

[4] N.L.R.B. v. Kinner Motors, Inc., 9 Cir., 152 F.2d 816.

The Company filed a written motion before the Board for leave to introduce additional evidence as to the number of drivers in their employ on the crucial dates, to show that the Union did not have a majority. The Board, stating that the additional evidence even if credited, would not alter its findings, denied the motion. The Company has renewed that motion here. We have examined the proffered evidence and conclude that if it were admitted a substantial conflict would still exist, and the Board's finding thereon would still control. Therefore, the motion is denied.