## NATIONAL LABOR RELATIONS BOARD v. TOWNSEND.

### No. 12362.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1950.

Rehearing Denied Nov. 22, 1950.

David P. Findling, Associate Gen. Counsel, National Labor Relations Board, A. Norman Somers, Asst. Gen. Counsel, Abraham H. Maller, all of Washington, D. C., and Charles K. Hackler, Attys., National Labor Relations Board, Los Angeles, Cal., for petitioner.

Findlay A. Carter, Frederick A. Potruch and Carter & Potruch, all of Los Angeles, Cal. (James M. Nicoson, Los Angeles, Cal., of counsel), for respondent.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is a petition by the National Labor Relations Board pursuant to the National Labor Relations Act, as amended,[1] hereinafter called the Act, for the enforcement of its order directing respondent to cease and desist from certain unfair labor practices, to reinstate with back pay three employees and to take other action. Respondent resists on the ground that the Board lacks jurisdiction because the claimed unfair labor practices were not proved to affect interstate commerce.

Respondent is the proprietor of the "M. L. 'Red' Townsend's Garage" in Santa Maria, California. He sells new and used automobiles, automotive parts and supplies, and does automobile repair work. His sales of new automobiles are confined to Hudson automobiles purchased from the Hudson Sales Corporation located in Los Angeles, California. All such automobiles are picked up by respondent in that city.

Pursuant to a complaint filed in 1948 proceedings were had culminating in the order sought to be enforced. The Board determined that respondent's activities were within the purview of the Act, finding that in the year 1947 the respondent sold new Hudson automobiles purchased from the Hudson Sales Corporation to the extent of $70,770, and that in 1948, the time of the admitted unfair labor practices, was engaged in the same business. The Board also found "that a substantial portion of the Respondent's business involved the sale of new Hudson automobiles which were originally shipped from points outside the State of California."

The basis of the latter finding consisted of a decision,[2] of which the Board took judicial notice, wherein the Board had held that the Hudson Sales Corporation was engaged in interstate commerce because in 1946 a large portion of the automobiles, accessories and parts the Sales Corporation was selling had been shipped to it from points outside the State of California.

The respondent was not a party to this prior proceeding against the Hudson Sales Corporation but, although twice notified that he might do so, the respondent did not avail himself of a twenty day period allowed by the Board's Regulation 203.46[3] to object to receipt in evidence of the prior decision by the questionable procedure of taking judicial notice thereof or to the finding of basic fact rested thereon.

We think the failure to make such objection precludes respondent from here claiming error in the admission of such

1. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

2. Matter of Hudson Sales Corporation, 77 N.L.R.B. 378.

3. Rules and Regulations of the N.L.R.B. as amended August 18, 1948 (12 F.R. 5656, 5662; 13 F.R. 4872; redesignated as section 102.46 in 14 F.R. 78).

evidence or contesting the finding that the new automobiles sold by respondent were originally shipped from points outside the state.[4] Section 10(e) provides, *inter alia,* that "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Respondent presents various arguments as to why Section 10(e) does not apply. He contends in substance, that he was deprived of the right to be confronted with the evidence and so could not explain or refute it and that the Act requires that the Board base its decision upon evidence in the record. These arguments would of course apply in every case where the useful device of judicial notice was utilized. We are not prepared to say that administrative agencies may never take judicial notice.

The Administrative Procedure Act [5] recognizes that in a proper case judicial notice may be taken, Section 7(d) providing that "Where any agency decision rests on official notice of a material fact not appearing in the evidence in the record, any party shall on timely request be afforded an opportunity to show the contrary." And Section 10(b) of the National Labor Relations Act provides that an unfair labor practice proceeding "shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure * * *". The district courts can take judicial notice.

The further contention is advanced that to foreclose respondent from challenging the action of the Board in taking judicial notice is to confer jurisdiction by consent. We cannot agree. It is enough to rebut this contention to point out that if the decision of the Board in the Matter of Hudson Sales Corporation had been offered and received in evidence at the hearing without objection by the respondent he could not now assign such admission as error. This would be so even though exception was taken to the Board's ultimate finding of fact that respondent's activities were such as to fall within Section 2(6) and (7).[6] In substance, that is what happened here, for respondent was given an opportunity to object to the action of the Board.

■ From its prior decision, the Board found as a fact that the new automobiles sold by respondent originated out-of-state. In the absence of any objection we must accept that finding. The rule that jurisdiction cannot be conferred by consent does not go so far as to require a court to redetermine the existence of probative facts which, without objection, the trier of fact has found to exist from evidence before it. As was observed in United States v. Wilson, 10 Cir., 78 F.2d 465, 467, "Where jurisdiction of the trial court depends upon the existence of a fact, that fact must be proven if put in issue by the pleadings; but if the losing party complains of error of the trial court with regard to that fact, such error must be preserved in the record below and assigned and specified as error here. United States v. Kiles, 8 Cir., 70

4. However, as the Board's brief admits, respondent is not precluded from here contesting the ultimate finding of fact that his activities affect interstate commerce. The Board was informed of, and dealt with, respondent's contention that he was not subject to the Act because his activities were purely local. But the Board was not apprised of respondent's objection to taking judicial notice or the subordinate finding that the automobiles were originally shipped from outside the state until the matter reached this court.

5. 60 Stat. 237, 5 U.S.C.A. § 1001 et seq.

6. Section 2 provides:
"(6) The term 'commerce' means trade, traffic, commerce, transportation,

or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.
"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

F.2d 880; United States v. Ellison, 4 Cir., 74 F.2d 864, 869; Vincent v. United States, 64 App.D. 178, 76 F.2d 428."

■ The opportunity to object here afforded also disposes of any due process objections. Due process deals with substance, not with form. Cf. Market Street R. Co. v. Railroad Commission, 324 U.S. 548, 562, 65 S.Ct. 770, 89 L.Ed. 1171.

■■ The questions then remain whether the business of the respondent in selling new Hudson automobiles is one in which a labor dispute would affect commerce within the meaning of the Act and, if the answer is in the affirmative, whether the power of Congress under the commerce clause reaches so far. Bearing in mind that the scope of the Act extends to all labor disputes affecting interstate commerce that Congress can constitutionally reach and that in the Act "Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities which in isolation might be deemed to be merely local but in the interlacings of business across state lines adversely affect such commerce," Polish National Alliance of U. S. v. N. L. R. B., 322 U.S. 643, 648, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509, we think both questions must be answered in the affirmative.

As noted above, respondent's sales of new automobiles are confined to Hudson automobiles. These automobiles, which we must assume originated out-of-state, are purchased through a "Hudson Distributor-Master Dealer Sales Agreement" with the Hudson Sales Corporation of Los Angeles. As a "Master Dealer," respondent has the exclusive rights to sell Hudson vehicles within the limits of Santa Maria. During 1947 respondent's total volume of business amounted to $346,341. Sales of new Hudson automobiles purchased from Hudson Sales Corporation accounted for $70,770 of this total volume.

We think it apparent that the cessation of respondent's business due to a strike caused by its unfair labor practices would inevitably decrease the number of automobiles brought from without the state by the Hudson Sales Corporation during the period when respondent ceased to buy them because of a strike-caused stoppage of its business of selling them.

■ Such a decrease might be relatively small. It might be possible to buy new Hudsons outside of Santa Maria and respondent's business is not large. However, in N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226, it was noted that the possibility of turning to another source of supply is not controlling. And unless the volume of commerce that might be affected is so slight as to bring into play the maxim de minimis, the applicability of the Act is not dependent upon the amount of commerce affected. N. L. B. R. v. Fainblatt, 306 U.S. 601, 607, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014. With respondent's sales of new automobiles amounting to $70,770, it is obvious that there is here no room for the application of the maxim de minimis.

Further, as the Supreme Court has said, "Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." Polish National Alliance of U. S. v. N. L. R. B., supra, 322 U.S. page 648, 64 S.Ct. page 1199. For us to hold that respondent is beyond the Board's jurisdiction would allow countless like retailers of new automobiles to engage in unfair labor practices with impunity. The results might well be drastic.

■ The fact that Hudson Sales Corporation, respondent's immediate vendor, acquired title and intervened between the manufacturer and respondent does not require a different result. Williams Motor Car Co. v. N. L. R. B., 8 Cir., 128 F.2d 960, 963; Cf. N. L. R. B. v. Fainblatt, supra, 306 U.S. page 605, 59 S.Ct. 671. And it makes no difference that the obstruction follows rather than precedes the interstate movement. N. L. R. B. v. Van

De Kamp's Holland-Dutch Bakers, Inc., 9 Cir., 152 F.2d 818; Williams Motor Co. v. N. L. R. B., 8 Cir., supra.

We do not consider N. L. R. B. v. Idaho-Maryland Mines Corp., 9 Cir., 98 F.2d 129 controlling in the situation here presented. In this case respecting a national industry we accept our later statement in N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 784, that "The fact that the company, instead of itself buying all its supplies outside the state and shipping them in, as the record shows it did, now has some arrangement whereby someone else ships them in and then it buys them from the shipper after they come into the state, does not destroy the effect of the transactions on interstate commerce."

■ We recognize that the commerce clause cannot be pushed so far as to destroy the distinction between what is solely within the domain of the states and what is subject to federal control. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. But we feel that unfair labor practices of retailers of new automobiles which originate out-of-state present such a threat of substantially interfering with the free flow of goods across state lines that they may be reached by Congress and are within the scope of the Act.

■ So far as the instant case is concerned, it was for the Board to determine whether, in particular instances, unfair labor practices will adversely affect interstate commerce. Polish National Alliance of U. S. v. N. L. R. B., supra, 322 U.S. page 648, 64 S.Ct. 1199. In view of what we have said, and since respondent's labor practices are admittedly unfair, we feel the Board was fully within its powers in determining that it had jurisdiction in the instant case.

■ A further contention of respondent is that even though he is subject to the Board's jurisdiction, the Board should not assert jurisdiction in this case. Providing the Board acts within its statutory and constitutional power it is not for the courts to say when that power should be exercised. Many factors such as lack of funds or the imminence of a more drastic disruption of commerce in another industry might dictate that in a particular case powers explicitly granted should not be exercised. Cf. United States v. Morton Salt Co., 338 U.S. 632, 647, 70 S.Ct. 357.

■ Respondent also takes the position that the Board's assumption of jurisdiction in his case results in an unconstitutional unequal application of the law and, therefore, is contrary to due process. To answer this it is only necessary to point out that the Board has recently asserted jurisdiction over other dealers selling automobiles at retail. See Liddon White Truck Co., 76 N.L.R.B. 1181; Bell-Wyman Company, 79 N.L.R.B. 1424; Harrys Cadillac-Pontiac Company, 81 N.L.R.B. 1, 3; Midtown Motors, 80 N.L.R.B. 1679; Valley Truck and Tractor Co., 80 N.L.R.B. 444.

The petition for a decree of enforcement of the Board's order is granted.

STEPHENS, Circuit Judge (dissenting).

I dissent. The automobiles were purchased by a local retail dealer from a California company which had theretofore purchased them from the out-of-state manufacturer. That is the essential fact from which the majority arrive at the conclusion that the retail dealer was in "commerce" or that any interruption in his business would "affect commerce." For all we know the automobiles purchased from the California wholesale dealer had "come to rest" in the wholesaler's California warehouse as his own automobiles long before they were sold and shipped to the retailer. Of course, the interruption of one automobile sale by reason of the retailer's labor troubles in the long reach of time might have *some* effect on commerce. But in reason can a mere indefinite, remote, possible effect be held to come within the spirit of the Wagner Act? If so, interstate commerce is not a distinct thing—it is what Congress from time to time says it is. What good is there in saying "We recognize that the commerce clause cannot be pushed so far as to destroy the distinction between what is solely within the

domain of the states and what is subject to federal control." It reminds me of Daniel Boone's boast that he had never been lost but he had been bewildered for a week or two.

On Petition for Rehearing.

DENMAN, Chief Judge and ORR, Circuit Judge.

Although the contention was not made in his assignment of errors, respondent contends that an order of dismissal recommended by the trial examiner in his first report became the order of the Board because no exception was filed thereto, citing Section 10(c) [1] of the Act, which provides, inter alia: "In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed."

Assuming the order thus became the order of the Board, we do not agree with the contention that the Board lost control over the order and that it must be considered the final adjudication in the proceeding. The above quoted provision is immediately followed by Section 10(d),[2] providing that "Until a transcript of the record in a case shall have been filed in a court, as hereinafter provided, the Board may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it."

We think Section 10(d) gave the Board the power to take the action resulting in the order which we have considered in our opinion.

The petition for rehearing is denied.

1. 29 U.S.C.A. § 160(c).

STEPHENS, Circuit Judge, concurs in the denial of the petition, reserving the dissent expressed in his opinion.