**NATIONAL LABOR RELATIONS BOARD**
**v. PEERLESS QUARRIES, Inc. et al.**

**No. 4303.**

United States Court of Appeals,
Tenth Circuit.

Dec. 31, 1951.

Bernard Dunau, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers and Ruth V. Russell, Washington, D. C., on the brief), for petitioner.

John J. Manning, Kansas City, Mo., (Clif Langsdale, Kansas City, Mo., on the brief), for respondents.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

By this proceeding the National Labor Relations Board seeks the enforcement of its order of January 10, 1951, directed to the respondents, Peerless Quarries, Inc., herein called the company; International Union of Operating Engineers, Hoisting and Portable Local No. 101, A.F.L., herein called Local 101; and International Hod Carriers' Building and Common Laborers' Union of America, Heavy Construction Laborers' Local 663, A.F.L., herein called Local 663. The portions of the order which are material here directed the company to cease and desist from entering into or renewing or enforcing any union security agreement with locals 101 or 663 or any

other labor organization unless the agreement was authorized as provided by the National Labor Relations Act as amended,[1] recognizing locals 101 and 663 as the representatives of any of its employees until the Board certified the unions, advising the employees that they must become members of local 101 or 663 in order to work for the company, and encouraging membership in the locals or any other labor organization. The immediate reinstatement of an employee, James B. White, to his former position or one equivalent thereto was ordered. Locals 101 and 663 were ordered to cease and desist from causing the company to demote, transfer, discharge, or otherwise discriminate against its employees and from giving effect to the non-security provisions of their contract with the company. The company and the unions were ordered jointly to reimburse White for loss of pay.

The company operates a limestone quarry at Turner, Kansas, which is about seven miles from the Kansas-Missouri line. It employs approximately thirty men in the summer and fifteen to twenty men in the winter. Most of the men are classified as common laborers and the remainder are classified as skilled laborers. Local 101 exercises jurisdiction over the skilled labor, and local 663 over the common labor. Under the terms of a contract entered into between the unions and the company all employees were required to belong to one of the unions. This controversy arose out of the employment of James B. White as the operator of a high loader. The position was considered as skilled labor and was within the jurisdiction of local 101. White was a member of local 663, but not 101. He was a competent high loader operator and had been employed as such since July, 1947. For a period of eighteen months, the officials of 101 had complained to the company and demanded the removal of White as a high loader operator. The company continuously refused to remove White from his position until after 101 threatened a work stoppage and to picket the job. White was then advised that because of these complaints and threats it would be necessary to discontinue his employment on the high loader. He was given employment as the operator of a quarry wagon which was used for transporting rock from the mines to the crushing plant. The compensation for this work was $1.40 an hour, while the position of high loader paid $1.75 per hour. White complained to the Regional Office of the National Labor Relations Board and a complaint was filed charging the company and the unions with unfair labor practices.

The company and the unions resisted the enforcement of this order upon the grounds that: (1) the Board is without jurisdiction because the operations of the company do not affect commerce within the meaning of the Act; and (2) the transfer of the employee, White, was not a violation of the provisions of the Act since such transfer was made at the request of the employee and was not the result of restraint or coercion by local 101. These contentions are without merit.

The company, a Kansas corporation, mines, crushes, manufactures, and sells limestone and asphalt paving materials at its place of business in Turner, Kansas. The record shows that during 1949 the company sold and shipped by truck and railroad, materials valued at more than $40,000 to points outside Kansas. This figure represented approximately nine percent of its total sales. The company made additional sales totaling at least $150,000 to concerns engaged in interstate commerce. These sales, made locally to concerns whose business affected commerce within the meaning of the Act, constituted thirty-seven percent of its total sales. During the same year, the company purchased supplies and repair parts worth about $26,000 from outside the State of Kansas or about sixty percent of its total purchases of supplies and materials.

1. Under the Amended Act, 29 U.S.C.A. § 158, at the time this order was entered, the Board was required to certify that a majority of the employees eligible voted to authorize the labor organization to make such an agreement. Subsequent to the issuance of this order, the Act was further amended, Act of October 22, 1951, Pub.L. 189, 82nd Cong., 2d Sess., and an election is no longer required.

Early in 1950 the company purchased the component parts of an asphalt plant costing approximately $100,000 from sources outside Kansas. The company later in 1950 sold the total production of its asphalt plant, or 450 tons daily, to a company which used such products on a paving project in Kansas City, Missouri.

■ These facts are sufficient to sustain the Board's finding that the company's operations affected commerce within the meaning of the Act, and are sufficient to bring the company within the jurisdiction of the Board.[2]

■ It is conceded that the contract between the unions and the company which contained a union-security clause requiring all employees to be members of the union, had not been submitted to the employees in an election as required by the law as it existed at that time.[3] Without a valid contract containing the union-security clause, an employer is prohibited from discriminating against an employee because of his membership or non-membership in a union. 29 U.S.C.A. § 158. Since the contract containing the union-security clause was unlawful, the removal of White because of non-membership in local 101 was a violation of his rights under the Act.

■ The Board found that White's removal was the result of coercion and threats on the part of local 101. This finding is amply supported by the evidence. In fact there is no evidence to the contrary. White was an experienced and competent high loader operator. Officials of 101 had been demanding his removal for a long period of time because he was not a member of that union. The company acceded to these demands only after threats of picketing and work stoppage. It advised White that it could no longer resist these demands and that it would be necessary to remove him and place him on some other job. White advised officials of the company that in view of the necessity for his removal, he would prefer the job of operating a quarry wagon. His compensation was reduced 35 cents per hour. As a result of this demotion he complained to the National Labor Relations Board, and thereafter proceedings were instituted to restore him to his former position. There are no statements or acts by White that are consistent with the claim that he was transferred at his request.

The order will be enforced.

2. International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; National Labor Relations Board v. Denver Bldg. Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Conover Motor Co., 10 Cir., 192 F.2d 779; National Labor Relations Board v. Davis Motors, Inc., 10 Cir., 192 F.2d 782; National Labor Relations Board v. Tri-States Casualty Ins. Co., 10 Cir., 188 F.2d 50; United Brotherhood of Carpenters etc., v. Sperry, 10 Cir., 170 F.2d 863; National Labor Relations Board v. Niles Fire Brick Co., 6 Cir., 124 F.2d 366, certiorari denied, 316 U.S. 664, 62 S.Ct. 944, 86 L.Ed. 1740.

3. See footnote 1.